In re Petition for DISCIPLINARY ACTION AGAINST Richard D. VARRIANO, a Minnesota Attorney, Registration No. 131507.

No. A07–354.

Supreme Court of Minnesota.

Sept. 4, 2008.

Martin A. Cole, Director, Patrick R. Burns, First Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner Office of Lawyers Professional Responsibility.

Bruce D. Quick, Mark A. Friese, Fargo, ND, for respondent Richard D. Varriano.

OPINION

PER CURIAM.

The Office of Lawyers Professional Responsibility charged respondent Richard D. Varriano with trust account violations, failure to enter into written retainer agreements and provide settlement statements, improperly providing financial assistance to a client, representing two different clients despite an unconsented-to conflict of interest, and reciprocal discipline for violations determined by the North Dakota Supreme Court. The referee assigned to hear the case found multiple violations of the Minnesota Rules of Professional Conduct, and recommended an indefinite suspension, with eligibility to apply for reinstatement after one year. The Director contests the referee's conclusion that Varriano did not violate Rules 1.15(a) and 8.4(c) with respect to a check-cashing incident. We adopt the referee's findings, with the exception that we conclude the check-cashing incident constitutes a violation of Rule 1.15(a), and we impose the referee's recommended discipline of indefinite suspension for at least one year.

The referee made the following findings of fact. Varriano was admitted to practice law in Minnesota in 1981, and in North Dakota in 1988. He is a solo practitioner, and serves as a "three-quarter-time" public defender in Moorhead, Minnesota. He handles 750 to 1000 files per year, and practices with a very limited staff of one secretary working two hours a day. Varriano divorced in 2002, and has subsequently experienced financial difficulty.

Since 2002 Varriano has owed past-due taxes and penalties to the Internal Revenue Service (IRS), which has filed liens totaling $17,919.86 with the Cass County Recorder's Office in North Dakota. The IRS has been garnishing Varriano's personal and business accounts since 2002.

Varriano admits that he has used his client trust account to shelter his personal funds from the IRS.

In 2004 Wells Fargo Bank reported to the Director of the Office of Lawyers Professional Responsibility (Director) that there was an overdraft on Varriano's client trust account. Upon inquiry, the Director discovered that Varriano was using his trust account to deposit his own funds and to pay business and personal expenses. The Director closed the investigation once he was reassured that Varriano had ceased these improper uses of the account, and he instructed Varriano not to use the account improperly again.

On December 9, 2005, the trust account was again overdrawn, and Varriano informed the Director that all funds in the trust account were earned fees. Varriano continued to use the trust account as a personal/business account until January 2006, and he commingled his funds with those of clients from September 27 to October 6, 2004, from December 3 to 9, 2004, and from January 21 to 31, 2005.

In March 2005 K.H. approached Varriano with a check for $6,166 from the United States Department of the Treasury, made out to H.S. for social security benefits, and purportedly endorsed by H.S. K.H. asked Varriano for his assistance in cashing the check. Varriano had represented K.H. on approximately 15 criminal matters, including various theft charges, and was aware of K.H.'s criminal history. Varriano did not know H.S., and he made no attempt to verify that H.S. had authorized K.H. to negotiate the check. Varriano believed that K.H. had permission from H.S. to negotiate the check. Varriano deposited the check into his trust account and issued a trust account check for $3,600 to K.H., keeping the remainder for himself. He said at the referee hearing that he kept the remainder as repayment

of a loan he had made to K.H., but he had previously stated in a letter to the Director that K.H. told him the remainder was his "for providing the check cashing duty."

On July 27, 2005, H.S. signed a claim form with the Treasury Department alleging that the endorsement on the social security check was forged. After an investigation, the Treasury Department determined that the forgery was established and reclaimed the $6,166 from Wells Fargo Bank. Wells Fargo reversed the deposit on June 14, 2006, which resulted in an overdraft to Varriano's trust account.

Between April 2004 and January 2006, Varriano did not maintain trust account books and records required by Minn. R. Prof. Conduct 1.15.

In 2004–2005 Varriano represented three clients in personal injury actions, using oral contingent fee agreements. Upon the conclusion of each matter, Varriano failed to provide the client with a proper accounting detailing the amount of the recovery and the fees and costs withdrawn. In February 2005 Varriano represented a client in a criminal matter and charged the client a $5,000 nonrefundable retainer. Varriano did not enter into a written fee agreement with the client.

In 2004–2005 Varriano made four separate loans, totaling $3,651.78, to K.H., whom he was representing on criminal matters. Three of the loans were for the purpose of making restitution on behalf of K.H., and one was a loan directly to K.H.

In June 2003 Varriano was representing M.P. on charges of possession of a controlled substance. The police had discovered the evidence when they executed a search warrant at the home of M.P.'s mother, G.K. Varriano filed a motion to suppress the evidence, and he called G.K. to testify at the omnibus hearing on June 25, 2003. To make M.P.'s argument for

suppression, Varriano needed to establish that M.P. had an expectation of privacy in G.K.'s home. Although G.K. had apparently indicated in advance that she would testify that her son maintained his residence at her home, to Varriano's surprise, at the hearing, she testified under oath that M.P. did not maintain a residence at her home and did not have permission to stay there on the day of the search. The motion to suppress was denied.

Varriano subsequently contacted G.K. and asked her to sign an affidavit stating that she testified falsely at the June 25, 2003, hearing. He told her that she had committed perjury, and that she might be charged with perjury after the affidavit was filed, but that he would represent her. He also said that her age and lack of criminal record would likely result in an acceptable disposition if she were convicted. G.K. signed the affidavit, which Varriano filed with the court in support of a motion to reconsider. Varriano did not explain to G.K. that her interest conflicted with that of her son, and he did not obtain her consent to the conflict. She was later charged with perjury, tried, and convicted in January 2004. Varriano represented her through trial. On appeal, the court of appeals affirmed her conviction.

Varriano's disciplinary history includes a public reprimand by the Eighth Circuit Court of Appeals in 2002, and a public reprimand in North Dakota in 2006.

On August 14, 2007, the Director filed an amended and supplementary petition for disciplinary action,[1] charging Varriano with trust account violations, failure to enter into written retainer agreements and provide settlement statements, improperly providing financial assistance to a client, conflict of interest in the G.K. matter, making false statements in a disciplinary

investigation, and reciprocal discipline. We appointed the Honorable Bruce W. Christopherson to act as referee, and a hearing was held on December 28, 2007. At the beginning of the hearing, the charges of making false statements in a disciplinary investigation were withdrawn. Although the hearing had been continued to allow for testimony from G.K., she did not appear to testify.

The referee filed his Findings of Fact, Conclusions of Law, and Recommendation for Discipline on January 30, 2008. In addition to the facts already stated, the referee found that Varriano's commingling of client funds with his personal funds in the trust account placed client funds at risk of attachment or garnishment by the IRS, that Varriano did not act in an intentionally dishonest manner in the negotiation of H.S.'s social security check, that payments made on behalf of K.H. constituted financial assistance to a client in connection with pending litigation, and that Varriano's discussion with G.K. about the effects of signing and submitting the affidavit he requested on behalf of M.P. constituted legal advice given under circumstances in which a reasonable person would rely upon the advice. This legal advice, together with Varriano's promise to represent G.K. if perjury charges were brought, created an attorney-client relationship with G.K. Varriano's simultaneous representation of M.P. and G.K. resulted in a conflict of interest.

The referee concluded that Varriano committed multiple violations of the Minnesota Rules of Professional Conduct: use of his trust account for personal and business expenses and commingling his earned funds with client funds in violation of Minn. R. Prof. Conduct 1.15(a) and (b);

1. The original petition was filed on February 14, 2007. We hereinafter refer to the amended and supplementary petition as the Director's petition.

failure to maintain proper trust account books and records in violation of Minn. R. Prof. Conduct 1.15(h) (2005); failure to enter into written nonrefundable retainer agreements and contingent fee agreements, and failure to provide settlement statements in violation of Minn. R. Prof. Conduct 1.15(b) and (c) (2005) and *In re Lochow*, 469 N.W.2d 91, 98 (Minn.1991); providing financial assistance to a client in connection with pending litigation in violation of Minn. R. Prof. Conduct 1.8(a) and (e) (2005); providing legal advice in violation of Minn. R. Prof. Conduct 1.7(b) (2005); improperly charging a nonrefundable retainer, failing to explain to a client the terms of their agreement, and failing to refund to a client the unearned portion of a retainer, as determined in North Dakota disciplinary proceedings, in violation of Minn. R. Prof. Conduct. 1.4, 1.5(a) and (b), 1.15(a), (b), and (c), and 1.16(d) (2005).[2] The referee concluded that Varriano's use of his trust account to negotiate the H.S. social security check did not constitute dishonesty in violation of Minn. R. Prof. Conduct 1.15(a) and 8.4(c). He recommended indefinite suspension for at least one year.

The Director challenges the conclusion that Varriano's conduct in the check-cashing matter did not violate Rules 1.15(a) and 8.4(c), and asks this court to hold that conclusion was clearly erroneous. Varriano does not explicitly challenge the referee's findings of fact, but he argues that he should not be disciplined for his conduct in the perjury matter. Otherwise, he recognizes that he has committed misconduct, but requests less severe discipline than that recommended by the referee.

**2.** Much of the conduct at issue in this case occurred before the October 1, 2005, changes to the Minnesota Rules of Professional Conduct. Citations to rules that were not amended will be to the current rule, without an indication of the date. Citations to rules that were amended as of October 1, 2005, will be to the version in effect before the amendments, and will include an indication of the date.

## I.

At a disciplinary hearing, the Director bears the burden of proving by clear and convincing evidence that the respondent violated the Rules of Professional Conduct. *In re Westby*, 639 N.W.2d 358, 367 (Minn.2002). Because a transcript was ordered, the referee's findings of fact and conclusions of law are not binding on this court. *In re Peterson*, 718 N.W.2d 849, 853 (Minn.2006); Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). We give "great deference" to the referee's findings, however, *In re Wentzell*, 656 N.W.2d 402, 405 (Minn.2003), and will uphold a referee's findings and conclusions "if they have evidentiary support in the record and are not clearly erroneous." *In re Moulton*, 721 N.W.2d 900, 905 (Minn.2006), *amended by In re Moulton*, 733 N.W.2d 777 (Minn.2007). The referee's findings that are based on a respondent's "demeanor, credibility, or sincerity," will be reversed only if " 'upon review of the entire evidence, [we are] left with the definite and firm conviction that a mistake has been made.' " *Id.* (quoting *In re Pinotti*, 585 N.W.2d 55, 62 (Minn.1998)).

### Social Security Check–Cashing

Our first question is whether it was clearly erroneous for the referee to conclude that Varriano's negotiation and disbursement of a social security check with a forged endorsement did not violate Minn. R. Prof. Conduct 1.15(a) and 8.4(c).

The Director alleged that Varriano's conduct in using his trust account to process a forged social security check violated Rule 1.15(a), which provided:

All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable interest bearing trust accounts as set forth in paragraphs (d) through (g). No funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) funds of the lawyer or law firm reasonably sufficient to pay service charges may be deposited therein.

(2) funds belonging in part to a client or third person and in part presently or potentially to the lawyer or law firm must be deposited therein.

Minn. R. Prof. Conduct 1.15(a) (2005). The referee concluded that Varriano's use of his trust account in the forged check incident "did not constitute dishonesty by [Varriano] in violation of Rule[ ] 1.15(a)."

The Director argues that the referee erred in finding no violation of the rule, because the funds were not deposited "in connection with a representation," as required by the rule. He further argues that the referee erred in requiring a finding of dishonesty to establish a violation of Rule 1.15(a), and asserts that the improper use of the trust account as a check-cashing service violated Rule 1.15(a) whether or not the use involved dishonesty. The Director does not challenge the referee's findings of fact concerning the social security check, but asks this court to draw a different conclusion of law.

■ We review de novo the interpretation of the Minnesota Rules of Professional Conduct. *In re Q.F.C.*, 728 N.W.2d 72, 79 (Minn.2007). The language of Rule 1.15(a) does not require that the attorney act dishonestly in order to violate the rule; misuse of the account, whether negligent or intentional, violates the rule. Attorneys licensed in Minnesota are charged with the knowledge that they must maintain trust accounts for client funds. *In re Copeland*,

505 N.W.2d 606, 608 (Minn.1993). An attorney's responsibility to maintain his or her trust account properly "goes beyond a requirement to refrain from intentional wrongdoing." *In re Porter*, 449 N.W.2d 713, 718 (Minn.1990).

■ Here, the funds at issue did not belong to a client but to a third party unknown to Varriano. K.H. told Varriano to keep $2,566 from the check as repayment of a loan. The funds were not being held in connection with a representation, but as a service to K.H., who needed to have the check cashed, and as a means for Varriano to be reimbursed for a loan. Rule 1.15(a) explicitly requires that funds held in connection with a representation be deposited into a trust account. Implicitly these are the only types of funds that belong in a trust account. Lawyers' personal funds or fees to which they are entitled must not remain in the trust account.

If Varriano was entitled to the funds as reimbursement for a loan, they should not have been left in his trust account. Use of trust accounts as check-cashing services thwarts the important purpose of safeguarding client and third-party funds. By cashing a check for K.H., Varriano put other clients' funds at risk of being used to cover the eventual overdraft when the money was reclaimed by the Treasury Department. Such use of Varriano's client trust account is not permitted by the rules. We conclude that Varriano violated Rule 1.15(a) by using his trust account to negotiate an unknown third party's social security check.

The Director's petition for discipline further alleged that Varriano violated Rule 8.4(c) by misusing his trust account to process a forged social security check. The rule provides: "It is professional misconduct for a lawyer to . . . (c) engage in conduct involving dishonesty, fraud, deceit

or misrepresentation." Minn. R. Prof. Conduct 8.4(c).

The referee made the following findings: [Varriano's] role in the [H.S. social security check] transaction, as an experienced attorney versed in criminal law is troubling. Although H.S. was the payee on the check and had ostensibly endorsed it, [Varriano] kept some of the funds to repay K.H.'s debt to himself and paid the balance to K.H. At a minimum, his actions equaled negligence, or possibly even gross negligence. However, the identity of the forger has not been established. Indeed, the fact of forgery was never conclusively established in an adversarial proceeding. The charge against [Varriano's] trust account was initiated when H.S. signed a Treasury Department form alleging forgery. Thus, the circumstances of the forgery, if it occurred, the knowledge of K.H., and the extent of his relationship with H.S. were not in evidence. [Varriano] earned a college undergraduate degree in accounting. He had considerable experience with accounting procedures with the banking system. Most significantly, when all portions of the transaction were completed, [Varriano] owed his bank the entire amount of the check, and has thus lost the $3,600.00 he paid K.H. This was the foreseeable outcome of negotiating a check if it was forged, as a person with [Varriano's] education and experience would have likely known at the time. After weighing all factors, the Referee does not conclude that [Varriano] acted in an intentionally dishonest manner in the transaction by negotiating a check known or suspected by him to be forged.

There is no separate credibility determination; the referee precedes his findings of fact with the statement that they are based on the evidence received "including credibility determinations where appropriate." The referee made the following conclusion of law: "[u]sing his trust account in the H.S./K.H. forged check incident did not constitute dishonesty by Respondent in violation of [Rule 8.4(c) ]."

The Director disagrees with the referee's characterization of Varriano's actions as negligent, argues that Varriano "suspended common sense and ordinary judgment in order to recover from K.H. a portion of the funds he had loaned to K.H.," and contends that the retention of part of the proceeds of the check was not simply negligent, but dishonest.

■■ We have said that a lawyer "violates Rule 8.4(c) by making false representations with an intent to deceive." *Westby*, 639 N.W.2d at 370. A violation of 8.4(c) thus implies an intentional act by the attorney. Although the referee described Varriano's conduct as "troubling" in light of his education and experience, the referee determined that the facts in evidence did not lead to the conclusion that Varriano acted in an "intentionally dishonest manner." The referee thus appears to have made a credibility determination that, despite what he should have known or suspected, Varriano did not in fact know or suspect the endorsement on the check was forged. We conclude that the referee's finding that Varriano did not act dishonestly, and his conclusion that Varriano's action in cashing the check did not violate Rule 8.4(c), are not clearly erroneous. We therefore adopt the referee's findings of fact and conclusions of law, with the exception of the conclusion that the social security check incident was not a violation of Rule 1.15.

*G.K. Matter*

■■ In thus adopting the referee's findings, we also conclude that the evidence supports the referee's finding that

there was a conflict of interest in Varriano's representation of G.K. One client's interest in obtaining an affidavit from G.K. for use to reconsider the July 7, 2003, order conflicted with G.K.'s interest in avoiding prosecution for perjury. Given the existence of Varriano's attorney-client relationship with both G.K. and M.P., Varriano's failure to discuss the conflict of interest inherent in those representations, and his failure to obtain G.K.'s consent to his representation of her despite the conflict, clearly violated Minn. R. Prof. Conduct 1.7(b).

## II.

We turn to the appropriate sanction for Varriano's misconduct. The referee recommended indefinite suspension, with eligibility to apply for reinstatement after one year from the date of this court's decision. Varriano acknowledges that discipline is warranted, but asks us to impose a public reprimand and probation.

 Although we place great weight on the referee's recommendation of discipline, we retain responsibility for determining the appropriate sanction. *Nelson*, 733 N.W.2d at 463. In determining the sanction, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* We look to similar cases for guidance, but we make the final determination on a case-by-case basis, after examination of the acts of misconduct and consideration of both aggravating and mitigating circumstances. *Id.* at 463–64. "Even where no single act of misconduct standing alone warrants severe public discipline, the cumulative weight and severity of multiple disciplinary rule violations may compel such discipline." *In re Geiger*, 621 N.W.2d 16, 23 (Minn.2001).

 The referee's recommendation of indefinite suspension for at least one year is in line with discipline we have imposed in cases involving similar violations. Trust account violations alone generally lead to suspensions; indeed, we have said that "'misuse of trust accounts will almost invariably result in lengthy suspension at the very least and disbarment at worst.'" *In re Overboe*, 745 N.W.2d 852, 868 (Minn.2008) (quoting *In re Kinnunen*, 502 N.W.2d 773, 775 (Minn.1993)). Even "'unintentional misappropriation as the result of poor accounting practices'" can result in discipline. *Id.* "'We take trust account violations seriously and will not hesitate to impose a disciplinary suspension to protect the public from attorneys who either intentionally or unintentionally fail to exercise care in handling client funds.'" *In re Hoedeman*, 620 N.W.2d 714, 718 (Minn.2001) (quoting *In re Haugen*, 543 N.W.2d 372, 375 (Minn. 1996)). We imposed a three-month suspension on a lawyer who had multiple overdrafts of his trust account and used it as a personal account. *In re Edinger*, 700 N.W.2d 462, 464–69 (Minn.2005). The failure to maintain proper books and records warrants discipline as well. *See In re Ranum*, 611 N.W.2d 344, 344–45 (Minn. 2000). Varriano's trust account violations are aggravated by two factors: his misuse was intentional and persisted even after the Director explained to him that he was violating the rules, and he intentionally frustrated legitimate IRS collection efforts. The one mitigating factor is that no clients sustained known losses as a result of the trust account violations.

We have imposed lengthier suspensions in cases involving conflicts of interest. When an attorney borrowed a substantial sum of money from a client without informing her of the conflict, we imposed a one-year suspension. *In re Dillon*, 371

N.W.2d 548, 548–52 (Minn.1985). The attorney's misconduct in *Dillon* included misappropriation of client funds, misrepresentation, charging an excessive fee, and using the contingent fee he expected to secure the loan he obtained. *Id.* Likewise, we have imposed a one-year suspension when there was a conflict of interest combined with other misconduct not involving dishonesty. *In re Perl*, 407 N.W.2d 678, 680–83 (1987) (attorney also paid referral fees to nonlawyer employees and solicited clients in violation of the rules). Varriano's conflict of interest is aggravated by the fact that his representation of G.K. occurred at a time when she was particularly vulnerable, *see In re Kaszynski*, 620 N.W.2d 708, 712 (Minn.2001), that the conflict was clear and certain, and that the foreseeable and likely consequence of his advice was G.K.'s prosecution for perjury.

In addition to the serious misconduct outlined above, Varriano failed to enter into written retainer agreements when he received nonrefundable fees or agreed to a contingent fee, failed to provide settlement agreements to clients paying contingent fees, and provided financial assistance to a client in connection with pending litigation. The failure to enter into written agreements is aggravated by the fact that the failures were not isolated, but a customary business practice. Although these violations might not merit severe discipline, their cumulative weight, added to that of the more serious violations, warrants severe discipline. *See, e.g., In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004).

Under Rule 12(d), RLPR, a final adjudication in another jurisdiction that a Minnesota lawyer has committed misconduct shall conclusively establish the misconduct for purposes of disciplinary proceedings in Minnesota, unless this Court determines otherwise. Varriano was publicly reprimanded in North Dakota for several violations. In light of the additional misconduct discussed above, a more serious sanction is warranted. In addition, there is the aggravating factor of Varriano's being publicly reprimanded by the Eighth Circuit Court of Appeals.

■ We conclude that the appropriate sanction for Varriano's misconduct is indefinite suspension, with eligibility to apply for reinstatement after one year from the date of this decision. Varriano committed multiple and serious violations of the rules governing attorney conduct. Although his conduct did not lead to any known financial losses for his clients, client funds were exposed to the claims of Varriano's creditors when he used his trust account to shelter his own funds from the IRS. *See Overboe*, 745 N.W.2d at 869. Furthermore, Varriano's actions resulted in significant nonfinancial harm to G.K. Varriano's failure to explain to G.K. the conflict of interest is the sort of behavior that decreases public trust in the profession.

Accordingly, we order that:

1. Richard D. Varriano be indefinitely suspended from the practice of law, effective immediately, and be ineligible to petition for reinstatement for a minimum of one year.

2. If Varriano seeks reinstatement, he must comply with the requirements of Rule 18(a)-(c) of the Minnesota Rules of Lawyers Professional Responsibility.

3. Varriano shall comply with the requirements of Rule 26 of the Minnesota Rules of Lawyers Professional Responsibility.

4. Varriano shall pay the Director's office $900 in costs and an amount in disbursements to be determined in compli-

ance with Rule 24 of the Minnesota Rules of Lawyers Professional Responsibility.

So ordered.