In re Petition for DISCIPLINARY ACTION AGAINST Richard J. COLEMAN, a Minnesota Attorney, Registration No. 136141.

No. A09–1656.

Supreme Court of Minnesota.

Jan. 26, 2011.

Martin A. Cole, Director, Robin J. Crabb, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Richard J. Coleman, St. Paul, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action. The petition alleged that respondent Richard J. Coleman violated the Minnesota Rules of Professional Conduct when he failed to act with reasonable diligence (Rule 1.3) and com-

municate with his clients (Rule 1.4), had a conflict of interest in representing codefendants in a criminal matter (Rule 1.7), knowingly failed to comply with applicable law regarding termination of representation (Rules 1.16 and 3.4) and to protect his client's interests (Rule 1.16(d)), and engaged in conduct prejudicial to the administration of justice (Rule 8.4(d)). Following a hearing, the referee concluded that Coleman committed the violations as alleged, and recommended that Coleman be suspended from the practice of law for six months and, upon reinstatement, be subject to two years of supervised probation. We agree with all but two of the referee's conclusions, and adopt the referee's recommended discipline that Coleman be suspended from the practice of law for a minimum of six months.

## I.

In August 2007, the Director served and filed a petition for discipline alleging that Coleman violated various rules of the Minnesota Rules of Professional Conduct. We appointed a referee to conduct a hearing, and then file findings of fact, conclusions of law, and issue a recommendation to the court. In December 2009, the Director amended the petition to assert an additional rule violation arising out of the same facts in the original petition.[1] Before the hearing, Coleman challenged the Director's right to amend the petition and moved to dismiss the petition for improper service. The referee denied the motions.

Coleman was admitted to the practice of law in Minnesota on May 7, 1982, and practices law in St. Paul. At the referee's hearing, the parties presented evidence regarding two client matters that related to the alleged misconduct.

### A. The S.A. Matter

In September 2006, S.A. and E.M. were arrested and charged with possession of a controlled substance and illegal possession of a firearm arising out of a police stop of the car that they occupied. Both S.A. and E.M. admitted they possessed a controlled substance but denied knowing that a firearm was in the car. When Coleman was engaged to represent them, he failed to disclose to either client the potential conflict of interest in representing both of them, either orally or in the written fee agreement with each client.

At an omnibus hearing, Coleman moved to suppress the evidence obtained by police at the time of the arrest. The motion was denied by the district court in an order filed on October 12, 2007. In a letter dated November 30, 2007, S.A. complained to the court that Coleman failed to communicate to him the outcome of the omnibus hearing. On December 5, 2007, Coleman notified S.A. of the October 2007 court order denying the motions to suppress.

Before trial, the prosecutor made an offer to Coleman that if E.M. pleaded guilty to a reduced charge and testified truthfully at S.A.'s trial, the State would dismiss the other charges against E.M. When advised of the offer, the district court told S.A. and E.M. that it believed Coleman may have a conflict of interest, and arranged for E.M. to discuss the conflict of interest issue with a different attorney. Thereafter, S.A. and E.M. consented to Coleman's continued representation. Subsequently, the prosecutor informed Coleman that a new witness had come forward who would testify that he purchased the firearm in question for S.A. Coleman responded that S.A. would testify

---

1. For ease of reference, "petition" refers to both the original and amended petition and

"answer" refers to both the original and amended answer.

that he sold the firearm to E.M. Because E.M. was expected to testify that he did not have knowledge of the firearm, the prosecutor notified the court of her belief that Coleman had an unwaivable conflict of interest.

At the next court hearing, Coleman advised the court that S.A. would testify he sold the firearm to E.M., and that E.M. would testify he had no knowledge of the firearm. Thereafter, S.A. requested that the court terminate Coleman's representation due to the conflict of interest and lack of communication. As a result, Coleman made a motion to withdraw, which the court granted.

### B. The M.M. Matter

Coleman was engaged to represent M.M. in a criminal matter and filed a certificate of representation with the court. In May 2007, Coleman appeared in court on behalf of M.M., but M.M. did not appear. Consequently, Coleman requested that the court allow him to withdraw from the representation. There is no record of an order, written or oral, permitting Coleman to withdraw from the representation of M.M.

M.M.'s case was set for trial on October 1, 2007, but Coleman did not receive notice of the court date and did not appear. As a result of Coleman's absence, the district court rescheduled the trial for Monday, October 8, 2007. On Friday, October 5, 2007, Coleman received a telephone message that asked whether "[M.M. was] still on for Monday morning." Coleman made no effort to contact his client, the prosecutor, or the court regarding the hearing and did not appear on October 8. The district judge assigned to the case sent a letter to the Director complaining about Coleman's nonappearance. After learning of the judge's complaint, Coleman submitted a written motion to withdraw, which was granted by the court.

Coleman has a history of professional misconduct. In 2001, Coleman received two private admonitions for trust account violations. In 2004, we publicly reprimanded Coleman, and placed him on probation for two years, for misconduct that included leaving a courtroom during trial, failing to adequately supervise a nonlawyer assistant, failing to appear in court on time, failing to deposit advance retainers in trust, failing to return client property, and failing to cooperate with the Director's investigation. *In re Coleman*, 679 N.W.2d 330, 330–32 (Minn.2004). Coleman also received in 2004 a private admonition for failing to communicate with a client, failing to act diligently in the course of representing a client, and failing to deposit client funds into a trust account. In August 2007, Coleman agreed to an additional two years of probation for failing to diligently represent clients and expedite litigation, failing to obey court rules, and engaging in conduct prejudicial to the administration of justice.

In February 2010, the referee filed with this court written findings of fact, conclusions of law, and a recommendation for discipline. The referee concluded that Coleman's actions violated Minn. R. Prof. Conduct 1.4(a)(3), 1.7(a)(1) and (2), 1.3, 1.4(a)(3), 1.16(c) and (d), 3.4(c), and 8.4(d). The referee recommended that Coleman be suspended from the practice of law with no right to petition for reinstatement for a minimum of six months and, if reinstated to the practice of law, be placed on supervised probation for a period of two years.

### II.

■ Initially, Coleman argues that the referee erred in denying his pretrial motions. First, Coleman contends the referee erroneously allowed the Director to

amend his petition for disciplinary action without the approval of the panel chair, contrary to Rule 10(e) of the Rules on Lawyers Professional Responsibility (RLPR). We have not previously determined the applicable standard of review of a referee's decision in this context.

■ The referee's hearing "shall be conducted" in the manner provided by the Minnesota Rules of Civil Procedure, and the referee "shall have all the powers of a district court judge." Rule 14(b), RLPR. Thus, a referee has the power to rule on a motion to amend a petition for discipline. *See* Minn. R. Civ. P. 15.01. We review a decision of the district court to grant a motion to amend for an abuse of discretion. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993); *see also In re Charges of Unprofessional Conduct Involving File No. 17139*, 720 N.W.2d 807, 811 (Minn. 2006) (concluding abuse of discretion standard was applicable to a decision by a district court denying the Director's motion for disclosure pursuant to Rule 25(a), RLPR). Consequently, we review a referee's decision on a motion to amend a petition for discipline for an abuse of discretion.

Rule 10(e), RLPR, requires the Director to obtain the approval of the Panel Chair of the Lawyers Professional Responsibility Board "before amending the petition to include additional charges based upon conduct committed before or after the petition was filed." Here, the proposed amendment was of minimal significance given that the amendment asserted a new rule violation based on the same facts set forth in the original petition. Coleman failed to show that the amendment prejudiced him. Thus, the referee did not abuse his discretion. Moreover, Coleman agreed, as part of a stipulation for discipline in 2007, that if the Director concluded during the period of probation that Coleman engaged in fur-

ther misconduct, the Director could file a petition for disciplinary action "without the necessity of submitting the matter to a Panel or Panel Chair."

■ Second, Coleman contends the referee erred in denying his motion to dismiss for improper service of the petition. It is undisputed the petition was served upon a person of suitable age and discretion at Coleman's residence. But Coleman contends the person served with the petition did not reside at his residence, and therefore service was not proper. We review de novo a district court's denial of a motion to dismiss for lack of personal jurisdiction due to improper service, but we apply the underlying factual determinations unless they are clearly erroneous. *Shamrock Development, Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn.2008) (citations omitted). We apply the same standards to decisions of a referee in this context.

■■ Personal service of a summons may be accomplished by "leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." Minn. R. Civ. P. 4.03(a). In cases involving substitute service at a defendant's residence, the rules governing service are "liberally construed when the intended recipient had actual notice of the lawsuit." *Thiele v. Stich*, 425 N.W.2d 580, 584 (Minn.1988). When there has been substantial compliance with Minn. R. Civ. P. 4, actual notice of the summons will subject a defendant to the jurisdiction of the court. *Thiele*, 425 N.W.2d at 584.

The referee found that Coleman had actual notice of the petition, and Coleman concedes that the Director served the petition upon a person of suitable age and discretion. The referee's finding is not clearly erroneous and supports the conclusion that the Director substantially

complied with Minn. R. Civ. P. 4.03. Therefore, the referee properly denied Coleman's motion to dismiss.

■ Finally, Coleman argues the referee erred in quashing a subpoena to compel S.A. to testify at the hearing, and in admitting S.A.'s deposition testimony into evidence. We review a referee's decision to quash a subpoena and to allow a witness's deposition into evidence for an abuse of discretion. *See* Rule 14(b), RLPR; *State v. Underdahl,* 767 N.W.2d 677, 684 (Minn. 2009); *Marquette Bank Nat'l Ass'n v. Cnty. of Hennepin,* 589 N.W.2d 301, 307 (Minn.1999).

Subpoenas for a trial, or in this case a hearing, are covered by Minn. R. Civ. P. 45. Rule 45.03(c)(2)(C) provides that when a subpoena requires a nonparty witness to incur certain substantial expenses to travel to the hearing, the court may quash or limit the subpoena to protect the nonparty witness. But when the subpoenaing party "shows a substantial need for the testimony ... that cannot be otherwise met without undue hardship," and that the nonparty witness will be "reasonably compensated," the court may order the appearance of the nonparty witness "only upon specified conditions." *Id.* Minnesota Rule of Civil Procedure 32.01(c)(2) provides that the deposition of a witness may be used by "any party for any purpose" if the court finds "that the witness is at a greater distance than 100 miles from the place of trial or hearing."

S.A. lives more than 100 miles from the location of the referee's hearing, and the subpoena would have required S.A. to incur substantial expense by traveling outside the county where he resides, works, and regularly transacts business. Moreover, Coleman failed to show a substantial need. Here, Coleman attended the deposition of S.A. and cross-examined him for about one hour before S.A. terminated the

deposition. Based on the record, the referee did not abuse his discretion in quashing the subpoena and admitting the deposition testimony.

### III.

■ Coleman next argues that the referee's findings of fact and conclusions of law are not supported by the record. The Director bears the burden of proving professional misconduct by clear and convincing evidence. *In re Varriano,* 755 N.W.2d 282, 288 (Minn.2008); *see also In re Gillard,* 271 N.W.2d 785, 805 n. 3 (Minn.1978) (adopting "full, clear and convincing evidence" standard for attorney discipline matters). This standard requires a high probability that the facts alleged by the Director are true. *In re Houge,* 764 N.W.2d 328, 334 (Minn.2009); *see also In re Ray,* 452 N.W.2d 689, 692 (Minn.1990) (noting that the clear and convincing evidence requires "more than a preponderance of the evidence, but less than proof beyond a reasonable doubt").

■ If a party orders a transcript of the hearing, as Coleman did here, the referee's findings of fact and conclusions of law are not conclusive. Rule 14(e), RLPR; *In Re Ryerson,* 760 N.W.2d 893, 900 (Minn.2009). But we give great deference to the referee's findings of fact and will not reverse those findings "if they have evidentiary support in the record and are not clearly erroneous." *In re Varriano,* 755 N.W.2d at 288 (citation omitted). A referee's findings are "clearly erroneous" when we are "left with the definite and firm conviction that a mistake has been made." *In re Lyons,* 780 N.W.2d 629, 635 (Minn. 2010) (quoting *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987)). Moreover, we review the findings of fact to determine whether they support the referee's conclusions of law. *See In re Waite,* 782 N.W.2d 820, 825 n. 3 (Minn.2010) (concluding that

the referee's findings were not sufficient to establish that the attorney had committed a criminal act); *In re Grigsby,* 764 N.W.2d 54, 61 n. 8 (Minn.2009) (concluding that the referee's conclusion of law that the attorney had committed a criminal act was not supported by the record); *see also In re Redburn,* 746 N.W.2d 330, 336 n. 5 (Minn. 2008) (concluding that the allegations of the disciplinary petition, deemed admitted due to the attorney's failure to answer, were insufficient to establish that the attorney violated certain rules of professional conduct). Applying these principles, we examine the referee's findings and conclusions regarding the S.A. and M.M. client matters.

### A. S.A. Matter

■ Essentially, Coleman argues that the referee erred in two ways. First, Coleman contends that the referee erred in concluding that Coleman failed to communicate with S.A. Rule 1.4, MRPC, provides that "a lawyer shall ... keep the client reasonably informed about the status of the matter." Coleman denies he failed to communicate with S.A.

The referee found that the order denying the motion to suppress was filed on October 12, 2007, and that Coleman failed to inform S.A. of the court's order until December 5, 2007. We find no evidence in the record that Coleman notified S.A. before December 5, 2007. We agree that a six-week delay in communicating the district court's order denying the motion to suppress evidence was unreasonable, and further agree that the delay violated Rule 1.4.

■ Second, Coleman argues that the referee erred in concluding Coleman had a conflict of interest in simultaneously representing S.A. and E.M. Coleman argues that neither a material limitation conflict of interest nor a directly adverse conflict of interest ever existed. Generally, Rule 1.7 requires that a lawyer examine whether a conflict exists before the representation is accepted and during the course of the representation as circumstances require. The conflicts of interest at issue in this case involve a material limitation conflict under Rule 1.7(a)(2) that existed at the time the representation commenced, and a directly adverse conflict under Rule 1.7(a)(1) that arose during the course of the representation. We examine each type of conflict in turn.

The simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by Rule 1.7(a)(2). It provides that a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." There is an inherently grave potential for a conflict of interest in every instance of multiple representation of criminal codefendants. *See* American Bar Association, *ABA Standards for Criminal Justice Prosecution Function and Defense Function,* Standard 4–3.5(b) (3d ed.1993). The potential for conflict of interest in representing multiple defendants in a criminal case is so serious that a lawyer should, as a general rule, decline to represent more than one codefendant. The critical question is the likelihood that a difference in interests of the codefendants may occur, and if it does, whether it would materially interfere with the exercise of the lawyer's independent judgment in pursuing litigation strategies that should be pursued on behalf of each client. Thus, when a lawyer presents a unified defense and the risk of adverse effect is minimal, the conflict may be waived by each codefendant.

When a material limitation conflict of interest exists, a lawyer may nevertheless

represent the client if the requirements of Rule 1.7(b) are met. The requirements of Rule 1.7(b) are that:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Rule 1.7(b)(4) requires the lawyer to obtain the informed consent of "each affected client," and that consent must be "confirmed in writing."

The referee concluded that a material limitation conflict of interest existed at the time the representation was undertaken, and that Coleman failed to obtain the informed consent of both clients confirmed in writing as required by Rule 1.7(b)(4). The referee's findings and conclusions are not clearly erroneous. It should have been obvious to Coleman that a conflict of interest existed. At the outset, neither S.A. nor E.M. admitted to possessing a firearm in the car. Since a firearm was found in the car by police, either S.A.'s or E.M.'s denial at trial of possession of the firearm would implicitly accuse the other of possession of the firearm, creating a battle of credibility between the two clients. Thus, both clients would have an incentive to change their story, or accuse or cast doubt upon the other.

■ Coleman next argues that the referee erred in concluding Coleman had a conflict of interest in representing S.A. and E.M., in violation of Rule 1.7(a)(1). Rule 1.7(a)(1) provides that a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client." A directly adverse conflict of interest is more serious than a material limitation conflict in terms of the potential impact on the lawyer's duties of loyalty and independent judgment to both clients. It applies to those situations where the joint representation will likely damage the attorney-client relationship and impair the lawyer's ability to represent both clients. Despite a directly adverse conflict of interest, it is possible for a lawyer to represent both clients if the requirements of Rule 1.7(b) are satisfied.

The referee concluded that a directly adverse conflict of interest occurred on two occasions during the course of the representation. The first occasion occurred when the State offered to dismiss the remaining charges against E.M. if he pleaded guilty to a reduced charge and agreed to testify truthfully at S.A.'s trial. The referee concluded the requirement that E.M. testify truthfully at S.A.'s trial rendered the representation of both clients directly adverse. At this stage of the proceedings, S.A. and E.M. were both expected to admit to the possession of the drugs found in the car and deny knowledge or possession of the firearm. Consequently, a unified defense was possible.

Since the referee did not indicate the factual basis for his conclusion, we are unable to affirm the referee's conclusions. At the request of the district court, E.M. met with separate legal counsel to discuss the potential conflict of interest. Following the meeting, both clients appeared in court and separately indicated to the court that they consented to the conflict. The referee did not indicate the basis for his conclusion that the interests of S.A. and E.M were directly adverse. Thus, we are unable to affirm this conclusion of the referee.

The second occasion occurred when Coleman received notice that S.A. would testify that he sold the firearm to E.M., and that E.M. would testify that he had no knowledge of the firearm. The referee concluded that the expected contradictory testimony of S.A. and E.M. caused a directly adverse conflict of interest in violation of Rule 1.7(a)(1), MRPC. The referee's conclusion is not clearly erroneous.

At this stage of the proceeding, Coleman's representation of S.A. would have required him to argue that S.A. sold the firearm to E.M., and would have therefore incriminated E.M. Simultaneously, Coleman's representation of E.M. would have required him to argue that E.M. had no knowledge of the firearm, and would therefore have contradicted S.A.'s testimony. Thus, Coleman was required to assert a claim for one client that was directly adverse to the interests of the other client. When Coleman became aware of the expected contradictory testimony of S.A. and E.M. and the resulting conflict of interest, he had a duty to withdraw from the representation unless he satisfied the requirements of Rule 1.7(b).

Rule 1.7(b)(1) requires that Coleman reasonably believe he would be able to provide competent and diligent representation to both clients. Because their expected testimony was directly contradictory, Coleman was unable to fulfill his duties of representing both clients competently and with due diligence. *See* Rule 1.1 and 1.3. Specifically, Coleman was unable to represent both clients and exercise independent judgment in pursuing all potential defenses and settlement possibilities for both clients. Since Coleman failed to satisfy Rule 1.7(b)(1), it is not necessary to examine the remainder of the rule. We conclude that Coleman failed to satisfy the requirements of Rule 1.7(b) and thus violated Rule 1.7(a)(1).

### B. The M.M. Matter

 Coleman contends the referee erroneously concluded that Coleman violated various rules of the MRPC in terminating his representation of M.M.[2]

First, Coleman argues that his oral request to withdraw was sufficient to satisfy the requirements of Rule 1.16(c). Rule 1.16(c) provides that lawyers who wish to withdraw from representation of a client "must comply with applicable law requiring notice to or permission of a tribunal." In criminal cases, Minn. R. Gen. Prac. 703 provides:

A lawyer who wishes to withdraw from a criminal case must file a written motion and serve it by mail or personal service upon the client and upon the prosecutor; and the lawyer shall have the matter heard by the court. . . .

If the court approves the withdrawal, it shall be effective when the order has been served on the client and the prosecutor by mail or personal service and due proof of such service has been filed with the court administrator.

The referee found that Coleman did not comply with Rule 703 and failed to notify his client, the court, or the prosecutor that he terminated his representation of M.M. It is undisputed that Coleman did not file a written motion to withdraw, and did not

---

**2.** The Director's petition alleged that Coleman failed to act with reasonable diligence in violation of Rule 1.3; failed to keep M.M. reasonably informed about the status of the matter in violation of Rule 1.4; failed to comply with applicable law regarding termination of representation in violation of Rule 1.16; failed to take steps to protect M.M.'s interests in violation of Rules 1.16(c) and 1.16(d); knowingly disobeyed an obligation under the Minnesota General Rules of Practice for the District Courts in violation of Rule 3.4; and engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4.

obtain an order granting the motion to withdraw to serve on his client and the prosecuting attorney. We conclude that the referee's findings are not clearly erroneous, and we affirm the referee's conclusion that Coleman's conduct violated Rule 1.16(c).[3]

■ Coleman next argues the referee erroneously concluded that Coleman violated Rule 3.4 by "knowingly" failing to comply with Minn. R. Gen. Prac. 703. Rule 3.4(c) prohibits a lawyer from "knowingly disobey[ing] an obligation under the rules of a tribunal." The referee found that when Coleman was engaged to represent M.M. that he filed a certificate of representation on behalf of M.M. A portion of the certificate of representation read: "I understand that I cannot withdraw from the representation unless said withdrawal is approved by the court after hearing on a written motion to Rule 7.03[sic] Minnesota General Rules of Practice." Consequently, we hold the referee's conclusion that Coleman knowingly violated a rule of the tribunal is supported by clear and convincing evidence.

■ Third, Coleman argues that the referee erroneously concluded that Coleman violated Rule 1.16(d) by failing to protect M.M.'s interests after he terminated his representation of M.M. Rule 1.16(d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client." The referee found that Coleman did not inform M.M. of his oral motion to withdraw or that he no longer represented M.M. The referee also found that when Coleman was advised that M.M. appeared in court without an attor-

ney, Coleman failed to request a continuance of the trial date to protect M.M.'s interests. The referee's findings and conclusions are not clearly erroneous.

■ Lastly, Coleman contends the referee erroneously concluded that Coleman's failure to properly terminate his representation of M.M. violated his duty to communicate with his client (Rule 1.4(a)(3)), his duty to diligently represent his client (Rule 1.3), and constituted conduct prejudicial to the administration of justice in violation of Rule 8.4(d). Coleman argues he diligently represented M.M., kept M.M. reasonably informed of the proceedings, and that any prejudice to the administration of justice resulted from M.M.'s failure to appear at the first court date.

Rule 1.3 provides that a lawyer "shall act with reasonable diligence and promptness in representing a client." Rule 1.4(a)(3) mandates that a lawyer shall "keep the client reasonably informed about the status of the matter." Rule 8.4(d) states that "[i]t is professional misconduct for a lawyer to: . . . engage in conduct that is prejudicial to the administration of justice."

The referee found that Coleman failed to terminate his representation in a diligent manner and that his conduct was prejudicial to the administration of justice. The referee's findings are not clearly erroneous. Moreover, Coleman's failures directly caused prejudice to M.M., whose trial was delayed and who was forced to appear in court without counsel.

### IV.

■ Because Coleman's conduct violated the Minnesota Rules of Professional

---

**3.** Even assuming Coleman's motion to withdraw had been orally granted by the court, Coleman still failed to comply with the requirements of Minn. R. Gen. Prac. 703 by not obtaining a written order or serving it upon his client and the prosecutor and filing proof of service with the court.

Conduct, we must now decide the appropriate discipline for his conduct. The referee recommended that Coleman be suspended for six months and be placed on supervised probation for two years upon his return to the practice of law. The Director supports the referee's recommended discipline of a six-month suspension followed by two years of supervised probation. Coleman maintains that he did not commit professional misconduct, and therefore no discipline is warranted.

■■■ "The purpose of discipline for professional misconduct is not to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct" by the disciplined attorney as well as by other attorneys. *In re Plummer,* 725 N.W.2d 96, 98 (Minn.2006). Although we place great weight on the referee's recommended discipline, we retain ultimate responsibility for determining the appropriate sanction. *In re Grigsby,* 764 N.W.2d 54, 62 (Minn. 2009). In imposing discipline, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson,* 733 N.W.2d 458, 463 (Minn.2007). We also consider any mitigating or aggravating circumstances. *Id.* Although prior decisions guide and aid us in enforcing consistent discipline, we impose discipline based on the unique facts and circumstances of each case. *In re Redburn,* 746 N.W.2d 330, 334 (Minn. 2008).

### A. Nature of the Misconduct

Coleman's misconduct relates to two client matters and is significant. Notably, Coleman failed to communicate with S.A. and M.M., failed to diligently represent M.M., failed to effectively withdraw resulting in prejudice to M.M.'s case, failed to comply with the rules regarding conflicts of interests while representing S.A. and E.M., and engaged in conduct prejudicial to the administration of justice. Coleman's conduct demonstrates a cavalier attitude toward the rules of this profession, particularly those meant to safeguard his clients' autonomy and interests.

### B. Harm to the Public and to the Legal Profession

■■■ The impact of the harm to the public and the profession requires consideration of "the number of clients harmed [and] the extent of the clients' injuries." *In re Randall,* 562 N.W.2d 679, 683 (Minn. 1997). Coleman's actions harmed his clients and the court system by delaying M.M.'s case, jeopardizing both S.A.'s and E.M.'s possible defenses to criminal charges, and depriving S.A. of the results of his omnibus hearing for six weeks.

### C. Cumulative Effect of the Misconduct

The Director asserts the cumulative effect of the misconduct warrants a six-month suspension. Most of the violations occurred while Coleman was still on probation for similar previous violations, increasing the cumulative effect of Coleman's violations. *See In re Selmer,* 749 N.W.2d 30, 40 (Minn.2008).

### D. Aggravating and Mitigating Factors

■■■ Coleman's lengthy disciplinary history and lack of remorse are aggravating factors in our decision for discipline. We consider the attorney's disciplinary history because, after being disciplined, an attorney is expected to show a "renewed commitment" to ethical behavior. *In re Milloy,* 571 N.W.2d 39, 45–46 (Minn.1997). Both public and private reprimands can be considered when determining the appro-

priate discipline for an attorney. *See In re Lyons,* 780 N.W.2d 629, 636 (Minn.2010) (considering the lawyer's seven reprimands, both public and private, when determining the appropriate discipline).

Coleman's history of professional misconduct is not disputed. He received two private admonitions for violations in 2001, a private admonition, a public reprimand, and two years of probation in 2004, and a stipulation for two years of probation in 2007. Moreover, the bulk of the misconduct that is the subject of this petition occurred while Coleman was on probation. In addition, some of the professional misconduct for which Coleman is to be disciplined here—failure to adequately communicate with his client and failure to obey court rules—is similar to that for which Coleman was disciplined in the past. *See In re Milloy,* 571 N.W.2d at 45–46.

Finally, Coleman has failed to acknowledge his misconduct or express remorse for it. No mitigating factors were found by the referee, and our review of the record reveals none.

## V.

The referee concluded that placing Coleman on probation for a third time will not sufficiently protect the public. Specifically, Coleman has been on probation four of the last six years, but continues to commit misconduct similar to that which warranted probation. All but one of the referee's conclusions are supported by clear and convincing evidence. We conclude that Coleman's misconduct, when considered in its totality, warrants suspension for a minimum of six months.

Accordingly, we order that:

1. Respondent Richard J. Coleman is indefinitely suspended from the practice of law, effective 14 days after the filing of this opinion, and is ineligible to petition for reinstatement for a minimum of six months from the effective date of the suspension. As a condition of petitioning for reinstatement, Coleman shall provide proof that he has successfully completed the professional responsibility portion of the state bar examination and has complied with all other conditions imposed by this opinion.

2. Coleman shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3. Upon reinstatement, Coleman shall be placed on supervised probation for a period of two years and shall be subject to such other conditions as the court may then impose.

4. Coleman shall pay $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.