In re Petition for DISCIPLINARY AC-
TION AGAINST Albert A. GARCIA,
Jr., a Minnesota Attorney, Registra-
tion No. 219472.

No. A09–877.

Supreme Court of Minnesota.

Dec. 29, 2010.

Martin A. Cole, Director, Cassie Hanson, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, Minnesota, for petitioner.

Albert A. Garcia, Jr., Duluth, Minnesota, pro se.

## OPINION

PER CURIAM.

This discipline case involving respondent attorney Albert A. Garcia, Jr., arises out of an amended petition for revocation of probation and for further disciplinary action filed by the Director of the Office of Lawyers Professional Responsibility. We suspended Garcia from the practice of law on September 3, 2009, pending final determination of discipline. A court-appointed referee heard evidence for and against the petition, concluded Garcia engaged in misconduct, and recommended that he be disbarred. Based on the referee's findings and our own review of the record, we conclude that Garcia's misconduct warrants disbarment.

Respondent attorney Albert A. Garcia, Jr., was admitted to practice law in Minnesota in 1991. His history of professional misconduct is substantial. In February 2006, Garcia was suspended for 30 days for failing to supervise a non-lawyer employee and for failing to refund the unearned portion of a client retainer. *In re Garcia*, 709 N.W.2d 237, 237–38 (Minn.2006). He received an admonition in March 2006 for failing to place an advance fee into his client trust account and for failing to comply with the terms of a nonrefundable fee agreement. On January 23, 2008, we publicly reprimanded him and placed him on probation for two years for including unethical terms in a fee agreement, failing to promptly return a substitution of counsel form while he was suspended from the practice of law, and making an unautho-

rized charge to a client's credit card. *In re Garcia*, 746 N.W.2d 126, 126 (Minn. 2008). The case now before us involves several acts of misconduct, the most serious of which, the T.R. matter, began in November 2007.

*The T.R. Matter*

Garcia represented T.R. and T.R.'s business for several years as an attorney and lobbyist and received a $1,500 monthly retainer. In November 2007, T.R. asked Garcia to hold in his client trust account $27,000 that T.R. had inherited and wanted to have available for a possible business venture. T.R. required Garcia to have T.R.'s permission to disburse the money. T.R. considered Garcia to be his attorney, but T.R. did not owe Garcia any fees at the time he delivered the funds, nor did he give the money as payment of fees.

A check for $27,000 payable to and endorsed by T.R. was deposited in Garcia's trust account on November 13, 2007. T.R. directed Garcia to pay $5,000 to T.R.'s brother to settle a loan, and Garcia did so with a check dated November 13. One of Garcia's family members, who worked in Garcia's office, signed Garcia's name to another check drawn on the trust account, dated November 14, for $19,759.95 payable to the Golden Valley Country Club. And Garcia signed two checks, dated November 15 and November 20, for $973 and $1,400, payable to the family member who worked in Garcia's office. None of those payments were authorized by T.R.

From February 2008 through April 2008, T.R. asked Garcia several times to issue a $7,000 check from the trust account to settle a lawsuit. On April 14, 2008—the day the case was set for trial—T.R. signed an agreement requiring him to pay the $7,000 by April 30, 2008. On April 30, Garcia delivered a cashier's check for $7,000 that was not and could not have been secured with funds drawn from his trust account, as the balance of that account never exceeded $344 from November 27, 2007 through February 2009, the last month for which an account statement is in the record. T.R. asked Garcia to return the rest of his money several times during 2008. T.R. filed his complaint with the Director on August 28, 2008, after a friend investigated several of the reasons given by Garcia for his inability to return the money and concluded they were false. Garcia made some partial payments, but the referee found that Garcia still owes T.R. $5,500.

*Presenting False Information, Coercing False Testimony, and Failing to Cooperate During the Disciplinary Investigation*

Garcia answered the Director's notice of investigation of the T.R. matter by submitting an affidavit signed by T.R. on October 27, 2008. In an accompanying letter, Garcia said T.R.'s affidavit would serve as his answer. Garcia denied he had represented T.R. in any personal matter and stated that he "join[ed]" T.R. in asking for the disciplinary complaint to be dismissed. On December 1, 2008, Garcia submitted an amended affidavit from T.R., dated November 12, 2008. The amended affidavit was different from the October 27 affidavit in only one respect: The date on which T.R. claimed to have received the inheritance was changed so it fell within a period for which Garcia had submitted bank records to the Director. In a letter sent with the amended affidavit, Garcia explained the date in the original affidavit was wrong because of a dictation error and informed the Director that he had "submitted my trust records for the period that [T.R.] told me.... Hence my submissions are consistent with the period that [T.R.] has attested to" regarding the inheritance and business venture. The Director made at least four requests for trust account records for the period including the Novem-

ber 2007 transactions but Garcia never complied. The Director obtained the records through an investigatory subpoena.

On July 28, 2009, T.R. signed a third affidavit that was subsequently filed with our court in support of the Director's motion for Garcia's temporary suspension. In this third affidavit, T.R. stated that Garcia presented him with both the October 27 affidavit and the November 12 amended affidavit already drafted and notarized. T.R. stated that Garcia "told me that if I signed the [first] affidavit he would be able to pay my inheritance funds to me. He also told me that the Office of Lawyers Professional Responsibility would prosecute me for perjury if I did not sign the affidavit." T.R. stated that in subsequent visits and telephone calls, Garcia made "harassing statements" that T.R. considered to be attempts to convince T.R. not to cooperate with the Director.

In the July 28 affidavit, T.R. stated that he signed his earlier affidavits without reading them and later learned the affidavits included several false statements. For example, in T.R.'s earlier affidavits, T.R. denied giving his inheritance funds to Garcia and claimed to have invested the funds in a business venture that T.R.'s wife opposed; in the July 28 affidavit, T.R. stated he did give the inheritance funds to Garcia for safekeeping. In T.R.'s earlier affidavits, T.R. stated that he had asked Garcia to draft the complaint to the Director so T.R. could show it to his wife and demonstrate he did not use the inheritance funds for the business venture. T.R. also claimed in the earlier affidavits that the complaint was taken from his desk and faxed to the Director without his knowledge. In the July 28 affidavit, T.R. stated that his wife knew of the business venture and that he willingly filed the complaint with the Director because Garcia would not return T.R.'s inheritance funds. In

the July 28 affidavit, T.R. also stated that Garcia had represented T.R. personally and T.R.'s business, contradicting Garcia's claim to have only represented T.R.'s business.

At the referee hearing, Garcia testified that he was free to use the funds T.R. gave him without restriction, so long as the funds were available when requested by T.R. Garcia then testified that the funds were available at all times in other accounts. The referee found this testimony to be not credible because, among other reasons, the testimony contradicted Garcia's initial statements during the investigation. The referee also found T.R.'s testimony to the contrary to be credible and corroborated. Garcia offered into evidence a document that appeared to be a written authorization by T.R. dated December 19, 2007, for Garcia to transfer $5,000 from Garcia's trust account to Garcia's law firm business account "for the payment of legal services." The referee found this document to be fabricated and an attempt to conceal Garcia's misappropriation.

*The A.S. Matter*

A.S. retained Garcia to represent him in an effort to withdraw a guilty plea entered under an agreement negotiated by a different attorney. A.S., who had not yet been sentenced, consulted with Garcia about seeking a more favorable deal, signed a fee agreement providing for a non-refundable $10,000 retainer, and paid $4,500. Garcia told A.S. he had a good chance of successfully withdrawing his plea.

Garcia filed a one-page motion to withdraw the guilty plea but submitted no memorandum or caselaw to support the request. Garcia appeared in court with A.S. three times: first at a hearing at which the proceedings were continued; second at a hearing at which the court denied the motion to withdraw; and third

at sentencing, when the court imposed the sentence called for in the initial agreement. Garcia also filed a one-page motion for reconsideration of the court's decision to deny the motion to withdraw the guilty plea, again without any memorandum or caselaw, that was denied.

A.S. asked Garcia to refund at least some of the $4,500 because he thought Garcia did not perform enough work to justify the fee. A.S. and Garcia agreed to submit the dispute to the Hennepin County Bar Association Legal Fee Arbitration Board, which held a hearing, reviewed Garcia's work, and determined on October 24, 2008, that Garcia had charged an unreasonable fee and should refund the entire $4,500. Garcia did not refund the fee.[1] After A.S. filed suit to confirm the arbitration award, Garcia wrote A.S. a post-dated check for $4,500, but Garcia's check was returned for insufficient funds. Despite subsequent assurances that payment would be made, Garcia never refunded the unreasonable fee, and on June 16, 2009, the district court entered an order confirming the arbitration award and judgment was entered in favor of A.S. Garcia has never paid the $4,500 judgment.

*The S.B. Matter*

In 2006, the police stopped S.B. while he was walking in a parking lot and administered a breathalyzer test. The positive result led to the immediate cancellation of S.B.'s restricted driver's license, which prohibited alcohol consumption by S.B. Garcia told S.B. he had a viable claim for judicial review of the cancellation. S.B. signed a fee agreement and paid a $1,000 retainer. In December 2006 Garcia filed a petition for judicial review of the cancellation of S.B.'s driver's license. He did not file a memorandum of law in support of the petition and did not give S.B. a copy of

the petition. Garcia's paralegal sent S.B. a letter dated January 2, 2007, informing him that a hearing in the matter was set for February 5, 2007. After receiving the letter, S.B. called Garcia, who told S.B. he would attend the hearing on S.B.'s behalf. Garcia also told S.B. not to worry and that S.B. did not need to attend the hearing.

On January 17, 2007, Garcia received the response of the Commissioner of Public Safety, who sought to have S.B.'s petition dismissed and reinstatement denied. The Commissioner attached to his response a copy of the form S.B. had signed acknowledging "that if I use or consume alcohol ... after my abstinence date, my driving privilege will be or will remain canceled and denied." Garcia did not give S.B. a copy of the Commissioner's response. On February 2, 2007, Garcia's paralegal sent a letter to the district court cancelling S.B.'s February 5 hearing and withdrawing the petition. Garcia did not consult with S.B. before he cancelled the hearing and withdrew the petition, nor did Garcia give S.B. a copy of the letter cancelling the hearing. S.B. learned the hearing had been cancelled when he called Garcia to learn the outcome. S.B. then asked for a refund of his $1,000 retainer, but Garcia refused to refund the retainer.

*Employer Withholding Taxes*

In his answer to the Director's amended petition for discipline, Garcia admitted that he did not file federal employer withholding tax returns on time, or did not pay those taxes on time, for each quarter of 2002, 2003, and 2004. The referee found that Garcia made several late payments for taxes owed for those years but presented no evidence at the September 2009 disciplinary hearing that he paid any part of

---

**1.** We note that the Director's investigation of the T.R. matter began in September 2008 and

was therefore under way at the time the arbitration board decided the A.S. dispute.

the taxes, penalties, and interest that were due.

*Referee's Conclusions of Law*

The referee concluded that Garcia misappropriated T.R.'s inheritance funds, made false statements to T.R. to conceal the misappropriation, and allowed a nonlawyer to sign checks issued on his trust account, in violation of Rules 1.15(c)(4) and (j) and Rules 8.4(c) and (d) of the Minnesota Rules of Professional Conduct (MRPC).[2] The referee further concluded Garcia made false statements to the Director and coerced T.R. to present false testimony to the Director, in violation of Rules 4.1, 8.1(b), and 8.4(c) and (d), MRPC.[3] The referee also concluded that Garcia failed to cooperate with the investigation of the T.R. matter as part of an effort to conceal the misappropriation and in violation of Rules 8.1(b) and 8.4(d), MRPC, and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR).[4] Further, the ref-

eree concluded that Garcia's failure to timely file or pay employer withholding taxes violated Rules 8.4(c) and (d), MRPC; that Garcia violated Rules 1.5(a) and 8.4(d) and (i), MRPC,[5] in the A.S. matter; and that Garcia violated Rules 1.2, 1.3, 1.4, 1.5(a), and 8.4(d), MRPC,[6] in the S.B. matter. The referee found substantial aggravating factors and no mitigating factors. The referee recommends that Garcia be disbarred.

## I.

■ Garcia did not appear at oral argument before our court because he was in federal custody on a criminal matter unrelated to the conduct at issue here. Garcia did request that we postpone the hearing so that he could be present but we denied his request to postpone the hearing. Garcia's absence, and the seriousness of his alleged misconduct and the referee's recommended discipline, persuade us to re-

---

2. Rule 1.15 governs lawyers' duties when safekeeping client funds or property. Rule 1.15(c)(4) requires lawyers to "promptly pay or deliver to the client or third person as requested the funds, securities, or other properties in the possession of the lawyer which the client or third person is entitled to receive." Rule 1.15(j) requires that every check issued on a trust account "shall be personally signed . . . by one or more lawyers authorized by the law firm." Rule 8.4(c) defines professional misconduct as "conduct involving dishonesty, fraud, deceit, or misrepresentation." Rule 8.4(d) defines professional misconduct as "conduct that is prejudicial to the administration of justice."

3. Rule 4.1 states lawyers shall not make false statements of fact or law in the course of representing a client. Rule 8.1(b) states, among other things, that lawyers shall not, in connection with a disciplinary matter, "fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from a[ ] . . . disciplinary authority."

4. Rule 25, RLPR, makes it the duty of any lawyer subject to an investigation to cooperate by complying with reasonable requests to furnish designated papers and documents and to furnish in writing "a full and complete explanation covering the matter under consideration."

5. Rule 1.5(a) states lawyers "shall not make an agreement for, charge, or collect an unreasonable fee." Rule 8.4(i) defines professional misconduct to include a lawyer's refusal "to honor a final and binding fee arbitration award after agreeing to arbitrate a fee dispute."

6. Rule 1.2 states that lawyers "shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Rule 1.3 requires lawyers to act with reasonable diligence and promptness when representing a client. Rule 1.4 requires, among other things, that a lawyer "keep the client reasonably informed about the status of the matter."

view the sufficiency of process afforded Garcia and the extent of his involvement in these proceedings.

 When we exercise disciplinary jurisdiction, the action before us is neither criminal nor civil; rather, it is an inquiry by our court into the conduct of one of our officers to determine if sanctions should be imposed and into his or her fitness to continue as a member of the profession. *In re Peters*, 332 N.W.2d 10, 16 (Minn. 1983); *In re Rerat*, 224 Minn. 124, 128, 28 N.W.2d 168, 172 (1947). We observe due process, but disciplinary proceedings "are not encumbered by technical rules and formal requirements." *In re Gherity*, 673 N.W.2d 474, 478 (Minn.2004). Rather, "[t]he charges to which an attorney must answer need to be sufficiently clear and specific and the attorney must be afforded an opportunity to anticipate, prepare and present a defense." *Id.* Our approach to reciprocal discipline cases is instructive. In those cases, when deciding whether to impose discipline identical to that imposed

by another jurisdiction, we look to whether the other jurisdiction provided the attorney the opportunity for a hearing at which evidence of good character or mitigating circumstances could be offered. *See, e.g., In re Koss (Koss I )*, 572 N.W.2d 276, 277 (Minn.1997); *In re Koss (Koss II )*, 611 N.W.2d 14, 15 (Minn.2000).[7]

In this case, the charges against Garcia were detailed and specific: The 20–page amended petition set out trust-account transactions, conversations and correspondence with clients and the Director, and the facts from Internal Revenue Service transcripts. Garcia filed an answer. Garcia had the benefit of an evidentiary hearing before a neutral factfinder. He was represented at that hearing by counsel. Garcia had the opportunity at the hearing to present evidence on his own behalf, to cross-examine witnesses testifying against him, and to present evidence of good character and mitigating circumstances. We conclude Garcia received sufficient due process.[8]

---

**7.** In *Koss I*, we declined to impose reciprocal discipline against an incarcerated attorney whom the Supreme Court of California disbarred under that state's summary disbarment statute, which required disbarment of any attorney convicted of certain felonies if committed in the course of practicing law or against a client. *Koss I*, 572 N.W.2d at 277. We instead provided him with six months following his release to request a disciplinary hearing in Minnesota because no hearing was required nor held in California. *Id.* at 278. The attorney appeared and testified at a hearing in Minnesota; afterward, the referee noted that the attorney "did not offer any character evidence in mitigation or any expression of contrition, and that there were no mitigating factors." *Koss II*, 611 N.W.2d at 15–16. The referee recommended disbarment, concluding there was no justification for a less-severe sanction, and we agreed. *Id.* at 16.

**8.** Garcia filed notice of his challenge to the findings, conclusions, and recommendation on November 20, 2009, in a letter to the Clerk

of Appellate Courts. In that letter, he asked for the briefing schedule in the case to be postponed until after his federal trial. (The letter was signed on Garcia's behalf by a family member. Garcia's lawyer withdrew on November 20.) In response to the letter, on December 2, we ordered Garcia's brief to be filed within 30 days after the conclusion of his federal trial, which was then set to begin January 4, 2010, and also set deadlines for the Director's brief and Garcia's reply. We informed the parties that oral argument would be scheduled after briefing was completed. And we ordered Garcia to immediately notify the Clerk when his trial ended or if it did not start as scheduled. Garcia did not do so.

By letter filed February 1, 2010, the Director informed us that Garcia pleaded guilty to the charge against him on January 25, 2010, the date to which the trial had been continued. By order dated February 1, we set February 24 as the deadline for Garcia's brief. He did not file a brief. The Director filed a brief on March 8, 2010, and oral

## II.

At a disciplinary hearing, the Director bears the burden of proving by clear and convincing evidence that an attorney violated the Rules of Professional Conduct. *In re Varriano*, 755 N.W.2d 282, 288 (Minn.2008). When neither the Director nor the respondent lawyer orders a transcript of the hearing, Rule 14(e), RLPR, provides that the referee's findings of fact and conclusions of law are conclusive. Rule 14(e), RLPR; *In re Karlsen*, 778 N.W.2d 307, 311 (Minn.2010); *In re Ryerson*, 760 N.W.2d 893, 900 (Minn.2009). If either party orders a transcript of the hearing, the findings and conclusions are not conclusive and the party may challenge any finding or conclusion. Rule 14(e), RLPR. When findings or conclusions are challenged, we defer to the referee and will not reverse unless the findings are clearly erroneous. *In re Waite*, 782 N.W.2d 820, 823 (Minn.2010). To challenge findings or conclusions, the rule directs that the party making the challenge "*shall* specify in the initial brief to the Court the referee's findings of fact, conclusions and recommendations that are disputed." Rule 14(e), RLPR (emphasis added). A failure to file a brief is a failure to challenge the findings or conclusions and

leaves us with no basis upon which to conclude the findings or conclusions are clearly erroneous. *In re Graham*, 609 N.W.2d 894, 896 (Minn.2000) (holding, after the lawyer ordered a transcript but did not file a brief, that "because there is nothing before us suggesting that they are clearly erroneous, we conclude that the referee's findings and conclusions must be upheld."). *Cf. In re Rebeau*, 787 N.W.2d 168, 173 (Minn.2010) (holding findings and conclusions were conclusive after lawyer withdrew objections prior to oral argument).

In this case, Garcia did not order a transcript, but the referee did. Garcia apparently relied upon the referee's decision to order the transcript when he informed us of his challenge within the ten days required by the rule. But, as in *Graham*, because Garcia has not presented any argument with respect to the referee's findings of fact or conclusions of law and because there is nothing before us suggesting that the findings are clearly erroneous, we conclude that the referee's findings and conclusions must be upheld.[9]

## III.

The purpose of professional discipline is not to punish the lawyer but

---

argument was scheduled for and held on October 6, 2010. Garcia was notified of the date and place of oral argument.

Garcia filed two letters in February 2010. The first was dated January 11, 2010, and filed February 18, before the briefing deadline. It refers to his "requesting to continue my briefing schedule until after my Federal Trial and my upcoming State Trial that follows very shortly thereafter." In this letter, Garcia stated he had been in federal custody since November 17, 2009, and had not received the files related to these proceedings from the lawyer who had previously represented him. He stated that he "will not be able to respond until sometime after my trial(s)." There was no clear request for a new deadline in this letter, and none was granted. In the second letter, dated February 8, 2010,

and filed February 26, after the briefing deadline, Garcia stated he was scheduled to stand trial on March 1, 2010, in Hennepin County. He asked for a briefing deadline 30 days after the conclusion of that trial. That request was not timely and was not acted upon. By letter dated September 20, 2010, Garcia asked for the October 6, 2010, oral argument to be delayed; we denied the request.

9. Independent of the failure to file a brief, however, we hold that the November 2007 statement for Garcia's client trust account and the July 28, 2009, affidavit signed by T.R., both of which were before the referee, are sufficient to conclude that the referee's findings and conclusions related to the misappropriation of T.R.'s funds are not clearly erroneous.

"to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Karlsen,* 778 N.W.2d at 311. Here, the referee recommends that Garcia be disbarred. We place great weight on a referee's recommended discipline but retain responsibility for determining the appropriate sanction. *In re Grigsby,* 764 N.W.2d 54, 62 (Minn.2009) (citing *In re Nelson,* 733 N.W.2d 458, 463 (Minn.2007)). In determining the appropriate sanction, we consider several factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* We impose sanctions "on a case-by-case basis, considering the specific acts of misconduct and any aggravating or mitigating circumstances, while looking to similar cases for guidance." *In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005). The Director argues disbarment is the only suitable outcome and asserts "[a]nything less ... is grossly disproportionate to similar cases and is insufficient to serve the purposes of attorney discipline."

*Nature of the Misconduct*

Garcia's misconduct is substantial and varied. The referee concluded that Garcia misappropriated funds and made false statements to T.R. to conceal the misappropriation; made false statements during the Director's investigation and disciplinary hearing and coerced T.R. to sign a false affidavit during the investigation; failed to cooperate in the Director's investigation; failed to timely file and pay employer withholding taxes; charged an unreasonable fee and failed to comply with a binding fee arbitration determination; dismissed a case without his client's permission, retained an unreasonable fee, and failed to communicate with his client; and

allowed a non-lawyer to sign checks drawn on his client trust account.

■ Misappropriation of client funds alone "is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors." *In re Rhodes,* 740 N.W.2d 574, 579 (Minn.2007) (internal quotation marks omitted). The rule is clear from its exceptions. For example, in *In re Hottinger,* this court accepted a stipulation for indefinite suspension in a case where the lawyer misappropriated $8,820 but had no prior disciplinary history in more than 34 years of practice, exhibited "genuine remorse," and made complete restitution of all missing funds. *In re Hottinger,* 731 N.W.2d 827, 827–28 (Minn.2007). In *In re Rooney,* although the lawyer misappropriated $27,700, several mitigating circumstances, "none of which alone would suffice to avoid disbarment," persuaded us that disbarment was "not necessary to achieve the goals of attorney discipline. Rooney's sincere remorse, strong evidence of good character, and lack of prior disciplinary history suggest that he is unlikely to commit such misconduct again." *In re Rooney,* 709 N.W.2d 263, 272 (Minn.2006).

■ There are no mitigating circumstances here. But there are several aggravating factors, including Garcia's substantial history of prior discipline; the fact that he committed misconduct while on public probation; his failure to exhibit remorse and to offer any assurance similar misconduct would not reoccur; and his failure to make complete restitution to T.R. or to A.S. In addition, the referee found that Garcia testified falsely during the disciplinary hearing about the misappropriation, about the extent of his role in preparing T.R.'s affidavits, and about a claim—made for the first time at the hearing—that Garcia had repaid T.R. in full. The referee stated that Garcia showed "a

dishonest or selfish motive" in his misconduct by misappropriating funds to pay country club fees, by taking legal fees and failing to adequately perform the services for which he was hired, and by failing to return unearned fees.

*Cumulative Effect*

 The lack of mitigating circumstances surrounding Garcia's misappropriation compels disbarment. So, too, does the cumulative weight and severity of his other disciplinary rule violations. In general, multiple rule violations "may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004). This case presents a different question, in that some of Garcia's misconduct, standing alone, would warrant severe discipline. For example, "failure to cooperate with the director's investigation represents egregiously unprofessional conduct and is grounds for public discipline, including suspension." *Karlsen*, 778 N.W.2d at 312 (internal quotation marks omitted); *see also In re Neill*, 486 N.W.2d 150, 151 (Minn.1992) (holding that failure to cooperate, without more, warrants suspension). False statements under oath have been grounds for suspension. *Karlsen*, 778 N.W.2d at 312 (citing *In re Czarnik*, 759 N.W.2d 217, 224 (Minn.2009)). And we have "repeatedly noted that the most appropriate discipline in tax misconduct cases is suspension." *Waite*, 782 N.W.2d at 827–28.

*Harm to the Public and to the Profession*

Garcia misappropriated funds and worked to conceal his misconduct by coercing a client to retract his complaint, and by presenting false evidence and testimony. He ignored an order to repay another client an unreasonable fee, refused to return an unearned fee, and failed to file and pay taxes. For all these reasons, we conclude that the public and profession would be at risk if we allowed Garcia to continue to practice law.

Accordingly, we order that:

1. Respondent Albert A. Garcia, Jr., be, and the same is, disbarred.

2. Garcia shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.