In re Petition for DISCIPLINARY AC-
TION AGAINST Barry V. VOSS, a
Minnesota Attorney, Registration No.
113293.

No. A11–2038.

Supreme Court of Minnesota.

May 22, 2013.

Martin A. Cole, Director, Siama Y. Chaudhary, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Edward F. Kautzer, Ruvelson & Kautzer, Ltd., Saint Paul, MN, for respondent attorney.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Barry V. Voss, alleging, among other things, that Voss misappropriated client funds, misused his trust account, neglected client matters, failed to timely file and pay employer withholding taxes and pay a law-related judgment against him, and failed to cooperate with the disciplinary investigation. Following an evidentiary hearing, the referee concluded that Voss's behavior violated multiple rules of professional conduct and recommended that he be indefinitely suspended for a minimum of 2 years. We adopt the referee's findings of fact and conclusions of law. But because we conclude the referee's recommended discipline does not account for the seriousness of Voss's misconduct, we order that Voss be disbarred.

Voss was admitted to practice law in Minnesota on September 29, 1978. He practices criminal defense as a solo practitioner. Voss was privately admonished in October 2001, August 2003, and January 2009 for various client-related misconduct.

In November 2011, the Director filed a petition for disciplinary action, alleging that Voss engaged in professional misconduct with respect to 12 client matters, misused his trust account, failed to pay employer withholding taxes, and failed to cooperate with the disciplinary investigation. Voss answered the petition, and we appointed Senior District Court Judge Bruce W. Christopherson to serve as referee. After an evidentiary hearing, the referee issued the following findings of fact and conclusions of law.

*E.S. Matter*

In June 2008, E.S. hired Voss to represent him in a criminal appeal and paid Voss $25,000. The next month, E.S. paid Voss an additional $12,400 to be held in Voss's trust account in anticipation of any potential civil lawsuits arising from the criminal matter. Voss and E.S. did not enter into a written retainer agreement. But according to E.S., Voss set his fee at $10,000 and agreed to return the remaining $2,400 to E.S.'s wife immediately. Voss failed to return the $2,400. A year later, E.S. terminated Voss as his attorney on the potential civil matter and asked for the return of the full $12,400 and his criminal file. Despite several requests over the next 5 months, Voss did not respond. Finally, in November 2009, E.S.'s wife retrieved a portion of the file from Voss, but Voss did not return the remainder of the file or the $12,400.

The referee concluded that Voss misappropriated the $12,400 for his personal benefit. In so concluding, the referee rejected as not credible Voss's testimony that the $12,400 was a flat fee and that he performed substantial but undocumented legal research on the civil matter. The referee also concluded that Voss violated Minn. R. Prof. Conduct 1.4,[1] 1.5(a),[2]

---

1. Minn. R. Prof. Conduct 1.4(a)(2) and (4), (b), requires a lawyer to "reasonably consult with the client about the means by which the client's objectives are to be accomplished," "promptly comply with reasonable requests for information," and "explain a matter to the extent reasonably necessary to permit the

1.15(c)(3) and (4),[3] 1.16(d),[4] and 8.4(c).[5]

*Minnesota Department of Revenue*

For all four quarters of 2008, 2009, and 2010 and the first quarter of 2011, Voss failed to timely file and pay state employer withholding taxes. Although Voss withheld money from his employees' paychecks to satisfy that tax liability, he did not remit the withholding to the State. As of January 25, 2012, Voss's tax liability remained at $37,266.93. Recently, Voss met with a tax attorney, filed all required tax returns through the third quarter of 2011, and signed a repayment agreement with the Minnesota Department of Revenue. Because of Voss's failure to file and pay taxes, the referee concluded that Voss violated Minn. R. Prof. Conduct 8.4(d).[6]

*K.T. Matter*

In January 2005, Voss retained K.T., a South Dakota lawyer, to serve as local counsel on behalf of a client. K.T. submitted written invoices to Voss for several court appearances. Voss made payments toward the invoices, but stopped making further payments after July 5, 2005. To recover the unpaid fees, K.T. sued Voss in small claims court. In November 2009, the court entered judgment against Voss in the amount of $4,892.12. Voss refused to pay the judgment, so K.T. commenced garnishment proceedings. In May 2011, the court garnished Voss's bank account to satisfy the judgment. The referee concluded that Voss violated Minn. R. Prof. Conduct 8.4(d).

*Trust Account*

In October 2009, the Director received notice that Voss's trust account was overdrawn. The Director initiated an audit, which revealed that Voss's trust account ran shortages ranging from $3,933.35 on May 12, 2009, to $15,975.42 on October 23, 2009. The audit also revealed that on several occasions Voss issued checks from his trust account to clients or himself without depositing any funds to cover the disbursements. In December 2009, Voss deposited $15,000 into his account to eliminate the deficit. The referee concluded that Voss negligently misappropriated client funds when he disbursed funds from his trust account that created shortages in individual client ledgers. The referee also concluded that Voss failed to maintain the required trust account books and records and commingled personal funds with client funds in his trust account, all in violation of Minn. R. Prof. Conduct 1.15, as inter-

client to make informed decisions regarding the representation."

2. Minn. R. Prof. Conduct 1.5(a), forbids a lawyer from "mak[ing] an agreement for, charg[ing], or collect[ing] an unreasonable fee or an unreasonable amount for expenses."

3. Minn. R. Prof. Conduct 1.15(c)(3), requires a lawyer to "maintain complete records of all funds ... coming into the possession of the lawyer and render appropriate accounts to the client or third person regarding them." Minn. R. Prof. Conduct 1.15(c)(4), requires a lawyer to "promptly pay or deliver ... as requested the funds ... in the possession of the lawyer which the client or third person is entitled to receive."

4. Minn. R. Prof. Conduct 1.16(d), requires a lawyer to, upon termination of representation, "take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that has not been earned or incurred."

5. Minn. R. Prof. Conduct 8.4(c), forbids a lawyer from "engage[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."

6. Minn. R. Prof. Conduct 8.4(d), forbids a lawyer from "engage[ing] in conduct that is prejudicial to the administration of justice."

preted by Appendix 1.[7]

### E.B./D.B. Matter

In April 2009, E.B. retained Voss to file a postconviction petition for her son, D.B., for $5,000. Voss sent a proposed retainer agreement to E.B., yet that agreement was not entered into the record. Initially, Voss met with D.B. in prison to discuss his case. Between the fall of 2009 and spring of 2010, E.B. called Voss's office several times requesting an update and copies of any documents Voss had filed. When Voss failed to return E.B.'s calls, D.B. terminated Voss's services. D.B. requested an accounting of work performed, the return of his file, and a refund of the retainer. Voss failed to comply with any of those requests. The referee found that Voss failed to file a postconviction petition for D.B. and discredited Voss's testimony that he performed substantial but undocumented legal research on the matter. The referee also found that Voss's retention of the $5,000 retainer constituted an unreasonable fee. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.3,[8] 1.4, 1.5(a), and 1.16(d).

### B.L. Matter

In November 2004, B.L. hired Voss to represent him in a federal criminal matter in Missouri. B.L.'s family paid Voss $125,000 in several increments throughout the representation. In early 2009, after B.L. was found guilty and exhausted all of his appeals, he requested that Voss provide an accounting of work performed and a copy of his file. Voss failed to do either, and did not respond to further repeated requests. The referee determined that while the fee arrangement appeared to be a flat fee, B.L. had a right to an accounting to ascertain the reasonableness of the fee. The referee concluded that Voss violated Rules 4–1.15(a), 4–1.15(i), and 4–1.16(d), Missouri Rules of Professional Conduct.[9]

### R.H./D.D. Matter

In April 2008, R.H. retained Voss to defend his step-son, D.D., regarding a controlled substance charge in state court. R.H. signed a retainer agreement and paid Voss $7,500. In June 2008, D.D. was indicted in federal court arising out of the same controlled substance incident, and R.H. paid Voss an additional $15,000 to represent D.D. in the federal matter.

---

7. Minn. R. Prof. Conduct 1.15(a), requires a lawyer to deposit "[a]ll funds of clients or third persons held by a lawyer or law firm in connection with a representation" into a trust account, and forbids a lawyer from deposit[ing] personal funds into that same account. Minn. R. Prof. Conduct 1.15(b), requires a lawyer to "withdraw earned fees and any other funds belonging to the lawyer or the law firm from the trust account within a reasonable time after the fees have been earned" and "provide the client or third person with: (i) written notice of the time, amount, and purpose of the withdrawal; and (ii) an accounting of the client's or third person's funds in the trust account." Minn. R. Prof. Conduct 1.15(h), and the accompanying Appendix 1, require a lawyer to "maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law."

8. Minn. R. Prof. Conduct 1.3, requires a lawyer to "act with reasonable diligence and promptness in representing a client."

9. The referee applied the Missouri Rules of Professional Conduct presumably because the "predominant effect" of Voss's misconduct occurred in Missouri. See Minn. R. Prof. Conduct 8.5(b)(2); see also Minn. R. Prof. Conduct 8.5(a) (stating that an attorney admitted to practice in Minnesota remains subject to this court's disciplinary authority for misconduct occurring in another jurisdiction). Neither party disputes the applicability of Missouri's rules, and those rules do not materially differ from the analogous provisions of Minn. R. Prof. Conduct 1.15(c)(3)–(4), 1.16(d).

From August 2008 through February 2009, D.D. repeatedly called but failed to reach Voss to discuss concerns he had about his case.

Shortly before a plea hearing on the federal matter, Voss met with D.D. to review the plea agreement. D.D. felt inadequately prepared and refused to sign the agreement. The court postponed the hearing to afford D.D. additional time. D.D. signed the plea agreement at a later hearing. In February 2009, D.D. terminated Voss's services. R.H. twice requested that Voss provide him an accounting of the $22,500 previously paid and a refund of any remaining balance. Voss failed to respond. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.4(a)(2) and (4), 1.4(b), 1.15(a), and 8.4(d).

*C.N./K.J. Matter*

In October 2008, C.N. retained Voss to represent her fiancé, K.J., in a federal criminal matter for $16,000. The attorney-client relationship eventually deteriorated and, in August 2009, Voss filed a motion to withdraw from the representation. That same day, K.J.'s new attorney, P.D., emailed Voss's office indicating he intended to file a substitution of counsel in the matter and requesting the file from Voss. In June 2010, Voss sent a portion of the file to C.N., but never furnished the file to P.D. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.16(d).

*S.M. Matter*

In early 2007, S.M. retained Voss to represent him in a criminal matter. S.M. pleaded guilty and was sentenced in September 2007. S.M. subsequently requested on several occasions that Voss provide a copy of his file, but Voss failed to do so. S.M. ultimately filed a complaint against Voss and, a year later, Voss sent S.M. a copy of his file. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.16(d).

*M.H. Matter*

In February 2007, M.H. retained Voss to represent him in a federal criminal matter for $9,000. Voss appeared in court at M.H.'s arraignment and met with M.H. three times over the next 2 months. Shortly after the arraignment hearing in May 2007, Voss became aware of a conflict of interest in the matter and withdrew from the representation. M.H. later repeatedly attempted to obtain a refund of the unearned portion of the retainer. Voss failed to respond to those requests. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.5(a) and 1.16(d).

*R.B. Matter*

In September 2008, R.B. paid Voss $15,000 to file a habeas petition in federal court. At R.B.'s sentencing hearing in March 2009, Voss told R.B. that he had completed the petition and would file it within 30 days. Voss never prepared or filed the petition. As a result, R.B. requested a refund of the $15,000 and the return of his file. Voss has not refunded the $15,000 to R.B. and only returned R.B.'s file in September 2009 at the request of the District Ethics Committee investigator. The referee discredited Voss's testimony that the $15,000 payment pertained only to undocumented legal research and not court representation. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.3, 1.5(a), 1.16(d), 4.1,[10] and 8.4(c).

*J.W./K.N. Matter*

In August 2009, J.W. retained Voss to represent him in a federal criminal matter for $15,000. In September 2009, K.N., J.W.'s girlfriend, paid Voss an additional

---

**10.** Minn. R. Prof. Conduct 4.1, forbids a lawyer from "knowingly mak[ing] a false statement of fact or law" while representing a client.

$15,000. J.W. asked Voss to draft a retainer agreement, but no written fee agreement was prepared and Voss failed to deposit the $30,000 into his trust account. In August 2010, Voss withdrew from the representation. J.W. then requested an accounting of the work performed but never received it. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.5(b),[11] 1.15(a), (c)(3) and (5),[12] and 1.16(d).

### G.S. Matter

G.S. retained Voss to represent him in a criminal matter for $5,000. Voss failed to attend a scheduling hearing on February 9, 2009, and G.S. appeared without counsel. The court rescheduled the hearing for March 23, 2009, but Voss also failed to attend that hearing. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.3, 3.2,[13] 3.4(c),[14] and 8.4(d).

### K.M. Matter

In March 2006, K.M. retained Voss for $14,000 to represent him in a postconviction matter. K.M.'s cousin signed the retainer agreement, which included a handwritten notation, signed by Voss, that stated: "This fee is for postconviction relief in Ramsey County district court and may include appeal to the Minnesota Supreme Court if the post-conviction is denied." In January 2008, Voss filed K.M.'s petition for postconviction relief. Four months later, the district court denied the petition and, in a May 6, 2008 letter, Voss notified K.M. that he would have 60 days to appeal the decision. K.M. attempted, without success, to contact Voss before the appeal period expired. Although aware of the deadline, Voss failed to ascertain whether K.M. intended to appeal. K.M. later requested the refund of a portion of the $14,000 paid to Voss. The referee concluded that Voss violated Minn. R. Prof. Conduct 1.1,[15] 1.3, 1.4(a)(2) and (4), 1.4(b), 1.5(a), and 1.16(d).

### Failure to Cooperate

Throughout the disciplinary investigation, Voss failed to timely or fully respond to the Director's requests for additional documents and other information regarding his trust account and the B.L., R.H./D.D., C.N./K.J., and M.H. matters. Moreover, Voss failed to respond altogether in the Minnesota Department of Revenue, K.T., and E.B./D.B. matters. The referee concluded that Voss failed to cooperate with the disciplinary investigation in violation of Minn. R. Prof. Conduct 8.1(b)[16] and

---

11. Minn. R. Prof. Conduct 1.5(b), as it read in 2009 and 2010, permits a lawyer to charge an "advance payment of nonrefundable fees to secure a lawyer's availability for a specific period of time or a specific service," but requires such an availability fee to "be reasonable in amount and clearly communicated in a writing signed by the client."

12. Minn. R. Prof. Conduct 1.15(c)(5), as it read in 2009 and 2010, requires a lawyer to "deposit all fees in advance of the legal services being performed into a trust account and withdraw the fees as earned."

13. Minn. R. Prof. Conduct 3.2, requires a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client."

14. Minn. R. Prof. Conduct 3.4(c), forbids a lawyer from "knowingly disobey[ing] an obligation under the rules of a tribunal."

15. Minn. R. Prof. Conduct 1.1, requires a lawyer to "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

16. Minn. R. Prof. Conduct 8.1(b), forbids a lawyer from "knowingly fail[ing] to respond to a lawful demand for information" in connection with a disciplinary matter.

8.4(d), and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[17]

*Aggravating and Mitigating Factors*

The referee found Voss's professional misconduct was aggravated by several factors, including: (1) his extensive experience in criminal defense practice; (2) his history of private discipline; (3) his misconduct was intentional and constituted a pattern of serious misconduct over an extended period of time; (4) his misrepresentations to R.B. were made for the selfish purpose of avoiding detection of his neglect; (5) his failure to cooperate continued after the disciplinary proceeding began; and (6) his refusal to acknowledge and exhibit remorse for his misconduct. The referee found that one factor mitigated Voss's misconduct: he filed all required Minnesota Department of Revenue tax returns and agreed to pay past-due taxes.

## I.

■■■ On appeal, Voss challenges several of the referee's determinations that he engaged in professional misconduct. The Director bears the burden of proving professional misconduct by clear and convincing evidence. *In re Varriano*, 755 N.W.2d 282, 288 (Minn.2008). If either party timely orders a transcript of the hearing, as the Director did here, the referee's findings and conclusions are not conclusive. Rule 14(e), RLPR; *In re Coleman*, 793 N.W.2d 296, 303 (Minn.2011). We nevertheless give "great deference" to the referee's findings and will uphold those findings if they have evidentiary support in the record and are not clearly erroneous. *Coleman*, 793 N.W.2d at 303. We defer to the referee's findings when they "rest on disputed testimony or in part on credibili-

ty, demeanor, and sincerity." *In re Lyons*, 780 N.W.2d 629, 635 (Minn.2010).

## A.

Voss argues that the referee's findings do not support four of his conclusions of professional misconduct. Voss first argues that the referee erred by concluding that he misappropriated client funds in the E.S. matter. We have previously discussed misappropriation in several contexts, two of which are relevant here. First, we have traditionally concluded that misappropriation of client funds occurs when "funds are not kept in trust and are used for a purpose other than one specified by the client." *In re Fairbairn*, 802 N.W.2d 734, 742 (Minn.2011) (citations omitted) (internal quotation marks omitted). Second, in *In re Lundeen*, we indicated that misappropriation may occur when a lawyer "perform[s] no work on [client] matters and never return[s] the funds to the clients." 811 N.W.2d 602, 608 (Minn.2012).

■■■ We conclude the record supports the referee's conclusion that both forms of misappropriation occurred in this case. E.S. paid Voss $12,400 to represent him in any potential civil law suits arising out of his criminal matter. But Voss set his fee at $10,000 and agreed to return the remaining $2,400 to E.S.'s wife. Instead, Voss kept, and thereby misappropriated, the $2,400. Moreover, Voss misappropriated the $10,000 when he rendered no services to E.S. during the representation and failed to refund the $10,000 to E.S. once the representation ended. Voss contends that he conducted legal research regarding any potential civil lawsuits and therefore was entitled to keep the $10,000. The referee rejected Voss's testimony on this claim as not credible—primarily be-

---

17. Rule 25, RLPR, requires a lawyer subject to a disciplinary investigation or proceeding to cooperate with the Director and comply with reasonable requests for information and documents.

cause neither the research was documented nor the civil suits materialized—and we defer to the referee's findings when they are based on a credibility determination. *See Lyons,* 780 N.W.2d at 635.

### B.

Voss next argues that the referee erred by concluding that he collected unreasonable fees or refused to refund the unearned portion of retainer fees. Minnesota Rules of Professional Conduct 1.5(a) prohibits a lawyer from collecting "unreasonable" fees, and Minn. R. Prof. Conduct 1.16(d) mandates that a lawyer "refund[ ] any advance payment of fees or expenses that has not been earned or incurred" when the client terminates the representation. Additionally, Minn. R. Prof. Conduct 1.5(b), as it read when the relevant conduct occurred, mandated that a retainer agreement for the client's "advance payment of nonrefundable fees to secure the lawyer's availability during a specified period of time or a specific service" be "clearly communicated in a writing signed by the client."

■ We conclude the record supports the referee's conclusion that Voss charged unreasonable retainer fees or failed to refund the portion of the retainer he did not earn in seven client matters.[18] For example, in the R.B. matter, Voss received $15,000 to prepare and file a habeas petition in federal court, yet never filed the petition. And in the M.H. matter, Voss received a $9,000 retainer in connection with the federal matter, but only met with M.H. briefly on three occasions and withdrew from the representation before the case ended.

18. The referee found that Voss charged unreasonable retainer fees or failed to refund the unearned portion of those fees in the E.S.,

Voss contends that he charged his clients nonrefundable, earned-upon-receipt availability retainers in compliance with the rules. But Minn. R. Prof. Conduct 1.5(b) requires that an availability retainer be in writing and signed by the client. It is undisputed that Voss failed to enter into a *written* retainer agreement signed by the *client* in each of those matters. Voss also contends that he performed the work necessary to retain the total amount of those fees, and his clients who seek a refund are simply dissatisfied because they were ultimately convicted. But the referee discredited Voss's testimony that he rendered substantial legal services in connection with those matters, and we defer to that credibility determination. *See Lyons,* 780 N.W.2d at 635.

### C.

■ Voss also argues that the referee erred by concluding that he failed to cooperate with the disciplinary investigation. Voss admits that he failed to reply to the Director's requests for information within the time periods requested, but contends that he made good faith efforts to substantially comply with the Director's requests. Even when a lawyer provides the requested information, albeit delinquently, we have held that the lawyer failed to cooperate with the investigation in violation of Minn. R. Prof. Conduct 8.1(b) and 8.4(d), and Rule 25, RLPR. *See In re Letourneau,* 792 N.W.2d 444, 451–52 (Minn.2011). The record supports the conclusion that Voss not only failed to timely comply with the Director's requests for information in five separate matters, but also that he failed to comply entirely in three other matters— the Minnesota Department of Revenue, K.T., and E.B. matters. Thus, we conclude

E.B./D.B., B.L., M.H., R.B., J.W./K.N., and K.M. matters.

the record supports the referee's conclusion that Voss failed to cooperate with the disciplinary investigation.

### D.

Voss argues that the referee erred by finding that his prior disciplinary history and lack of remorse were aggravating factors. Specifically, Voss contends that his prior disciplinary history consisted of "isolated and non-serious" private admonitions. But we have held that prior disciplinary history can aggravate the sanction for misconduct. *See In re Albrecht,* 779 N.W.2d 530, 542 (Minn.2010).

Voss also contends that the referee erroneously found that he expressed no remorse for his misconduct. Nothing in the record, however, demonstrates that Voss has taken personal responsibility or expressed remorse for his misconduct. Voss testified that he delegated several duties to his staff and faults them for the alleged misconduct. But Voss retains ultimate responsibility to ensure that he and his staff comply with ethics rules. *See* Minn. R. Prof. Conduct 5.3 (holding a lawyer responsible for the misconduct of a nonlawyer if the lawyer maintains direct supervisory authority over the nonlawyer and knows of the conduct at a time when its consequences can be mitigated but fails to take remedial action). On this record, the referee's finding that Voss lacked remorse is supported by the record.

Voss further contends that the referee erred by not finding that his good character is a mitigating factor. Previously, we have stated that a lawyer's "pro bono legal work, volunteer activities, and good character" may constitute mitigating factors in misappropriation cases. *Fairbairn,* 802 N.W.2d at 746 (citation omitted) (internal quotation marks omitted). But evidence of good character that merely demonstrates a lawyer *may* have acted ethically before the

filing of the petition is insufficient to mitigate the misconduct. *See In re Farley,* 771 N.W.2d 857, 863 (Minn.2009) (concluding that referee was "free to reject" testimony of good character as insufficient to support mitigation); *In re Parks,* 396 N.W.2d 560, 563 (Minn.1986) (concluding that character testimony of trustworthiness before the filing of the petition without out more does not mitigate the misconduct alleged in the petition). At the hearing, Voss presented the testimony of attorney Steven Meshbesher and retired United States District Court Judge James Rosenbaum. While Meshbesher and Judge Rosenbaum testified that Voss was highly competent, hard-working, and trustworthy, neither testified that he had personal knowledge of the facts alleged in the disciplinary petition. On this record, the referee's failure to find that Voss's good character constituted a mitigating factor is not clearly erroneous.

In sum, we conclude the referee's determinations that Voss engaged in professional misconduct and findings of several aggravating factors are supported by the record and are thus not clearly erroneous. Therefore, we adopt the referee's findings of fact and conclusions of law in their entirety.

### II.

Having concluded that Voss committed professional misconduct as determined by the referee, we now consider the appropriate discipline. The referee recommended that Voss be indefinitely suspended from the practice of law with no right to petition for reinstatement for a minimum of 2 years, with conditions for reinstatement. The Director disagrees with the recommended discipline and urges that Voss's misappropriation of client funds and other misconduct warrant disbarment. Voss

counters that previous cases with similar misconduct compel a 60–day suspension.

 The purpose of disciplinary sanctions for professional misconduct is not to punish the attorney, but rather to protect the public, safeguard the judicial system, and deter future misconduct by the disciplined attorney and other attorneys. *In re Nathanson,* 812 N.W.2d 70, 78 (Minn.2012). Although we place "significant weight" on the referee's disciplinary recommendation, we are the "sole arbiter of the discipline to be imposed." *Albrecht,* 779 N.W.2d at 540 (citation omitted) (internal quotation marks omitted). In imposing the appropriate discipline, essentially three factors guide us: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; and (3) the harm to the public and the legal profession. *Nathanson,* 812 N.W.2d at 79. We further administer sanctions on a case-by-case basis after considering any aggravating and mitigating circumstances, but also look to similar cases to ensure consistent discipline. *In re Rebeau,* 787 N.W.2d 168, 173–74 (Minn.2010).

### A.

 We first examine the nature of Voss's misconduct. Voss engaged in various types of misconduct, the most serious of which was misappropriation of $12,400 in client funds. The misappropriation of client funds alone "is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors." *In re Garcia,* 792 N.W.2d 434, 443 (Minn.2010) (citation omitted) (internal quotation marks omitted).

Additionally, Voss committed other forms of misconduct that also warrant severe discipline. Specifically, Voss misused his trust account by negligently misappropriating client funds, commingling person-al and client funds, and failing to maintain the required books and records. *See In re Lochow,* 469 N.W.2d 91, 98 (Minn.1991) (stating that trust account violations "almost invariably result in lengthy suspension at the very least"). Voss neglected his clients by ignoring their requests for accountings of work performed, the return of their files, and the refund of unearned or unreasonable fees, as well as failing to act with reasonable competence and diligence and to communicate with them during the representation. *See In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005) (warning that a "continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself"). Voss failed to timely file and pay employer withholding taxes and pay a law-related judgment against him. *See In re Swokowski,* 796 N.W.2d 317, 326 (Minn.2011) (concluding that failure to pay a professionally incurred debt is prejudicial to the administration of justice); *Rebeau,* 787 N.W.2d at 174 (holding that failure to timely file and pay employer withholding taxes constitutes serious misconduct warranting suspension or disbarment). And Voss failed to cooperate with the disciplinary investigation. *See In re De Rycke,* 707 N.W.2d 370, 375 (Minn.2006) (stating that noncooperation constitutes independent grounds for serious discipline).

### B.

 We next examine the cumulative weight of Voss's misconduct. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser,* 679 N.W.2d 153, 160 (Minn.2004). We distinguish between "a brief lapse in judgment or a single, isolated incident" from "multiple instances of mis[conduct] occurring

over a substantial amount of time." *Fairbairn*, 802 N.W.2d at 743 (citation omitted) (internal quotation marks omitted) (concluding that six separate instances of misappropriation over the course of 13 months constituted more than "a brief lapse in judgment"). In addition to Voss's two instances of intentional misappropriation of client funds, he engaged in numerous other types of professional misconduct—including multiple failures to refund unearned portions of retainer fees and timely file and pay employer withholding taxes—over the course of approximately 6 years. The combined magnitude and duration of all of Voss's disciplinary violations evidence more than a momentary misdeed and weigh in favor of severe discipline.

### C.

In assessing the harm to the public and legal profession caused by Voss's misconduct, we consider "the number of clients harmed and the extent of the clients' injuries." *Coleman*, 793 N.W.2d at 308 (citation omitted) (internal quotation marks omitted). Voss's misappropriation of $12,400 in client funds and failure to provide restitution to other clients from whom he kept unearned fees not only caused his clients to suffer financial harm but constituted a "breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *In re Rooney*, 709 N.W.2d 263, 270 (Minn. 2006). And Voss's neglect of clients proved "intensely frustrating" to them, reflects adversely on the bar, and weakens the public's confidence in the legal profession. *Albrecht*, 779 N.W.2d at 541–42 (citations omitted) (internal quotation marks omitted). Several of Voss's clients—including E.S., E.B., D.D., M.H., and K.M.—felt frustrated, betrayed, or otherwise lost faith in lawyers and the legal system.

### D.

We further weigh factors that may mitigate or aggravate the appropriate disciplinary sanction. The referee found several aggravating factors, including: (1) Voss's 35 years of experience, *see In re Ulanowski*, 800 N.W.2d 785, 802 (Minn. 2011); (2) Voss's history of three private admonitions, *see Coleman*, 793 N.W.2d at 308–09; (3) Voss's pattern of professional misconduct that persisted over an extended period of time and spanned multiple matters, *see Ulanowski*, 800 N.W.2d at 802; (4) Voss's failure to cooperate after the disciplinary proceeding began, *see id.* at 802–03; [19] and (5) Voss's lack of recognition of and remorse for his misconduct, especially his attempts to shift the blame to his staff, *see In re Westby*, 639 N.W.2d 358, 371 (Minn.2002). Additionally, the referee found as a mitigating factor that Voss has filed all required tax returns and agreed to repay all amounts due.

### E.

Finally, we consider prior cases with similar misconduct for guidance. The Director cites two cases to support his position that Voss's misconduct warrants dis-

---

19. The referee determined that Voss's failure to cooperate throughout the Director's investigation was professional misconduct, and that his failure to cooperate after the Director filed the petition for disciplinary action was an aggravating factor. Recently in *In re O'Brien*, we "caution[ed] referees not to rely on the *same* acts of noncooperation to support both a finding of attorney misconduct and the existence of an aggravating factor." 809 N.W.2d 463, 466 n. 9 (Minn.2012). Here, the referee properly relied on *separate* acts of noncooperation that occurred during the disciplinary investigation to support the conclusion of professional misconduct and acts of noncooperation that occurred during the disciplinary proceeding to support the finding of an aggravating factor. Thus, the caution we expressed in *O'Brien* is not applicable.

barment: *In re Lundeen*, 811 N.W.2d 602 (Minn.2012) and *In re De Rycke*, 707 N.W.2d 370 (Minn.2006).

In *Lundeen*, we disbarred a lawyer who misappropriated $7,800 in client funds. 811 N.W.2d at 608–09. The lawyer charged an availability retainer fee but did not perform any legal work and refused to refund the unearned portion of the fee. *Id.* at 608. The lawyer also failed to place funds in his trust account, neglected client matters, failed to satisfy a law-related debt, failed to comply with court orders, and failed to cooperate in the disciplinary process. *Id.* at 608–09. We concluded that the cumulative nature of the lawyer's misappropriation and other misconduct demonstrated a "disregard for the ethical practice of law." *Id.* at 609. The lawyer's prior disciplinary history along with his failure to cooperate further aggravated the sanction, while no factors served to mitigate the misconduct. *Id.*

In *De Rycke*, we disbarred a lawyer who misappropriated $2,000 in client funds, repeatedly neglected client matters, mismanaged his trust account, failed to appear at hearings, violated a court order, and failed to cooperate with the disciplinary investigation. 707 N.W.2d at 374–76. We noted that each of those violations alone provided sufficient grounds for disbarment, especially considering that the lawyer had been previously disciplined three times for similar conduct. *Id.* at 374–75.

Voss's misconduct is strikingly similar to that in *Lundeen* and *De Rycke*. Specifically, Voss misappropriated client funds, and the referee found several aggravating factors and no substantial mitigating factors. *See Garcia*, 792 N.W.2d at 443 (misappropriation of client funds alone "is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors" (citation omitted) (internal quotation marks omitted)). And in comparison to *Lundeen* and *De Rycke*, Voss's other misconduct is arguably more serious and extensive.

We have suspended lawyers who misappropriated client funds before, but only when substantial mitigating factors merited a sanction less severe than disbarment. In *In re Fairbairn*, we suspended a lawyer for 18 months when the lawyer misappropriated $144,000 in client funds yet demonstrated numerous mitigating factors, including extraordinary stress in her personal life, remorse, complete restitution of client funds, and lack of financial harm. 802 N.W.2d at 742–48; *see also Rooney*, 709 N.W.2d at 272 (imposing an 18-month suspension for a lawyer who misappropriated $27,700 in client funds but who exhibited sincere remorse, presented strong evidence of good character, suffered extraordinary stress, and lacked prior disciplinary history). Unlike *Fairbairn*, the referee did not find any substantial mitigating factors here to warrant a less severe discipline.[20]

The dissent contends that we should defer to the referee's recommendation. We

---

**20.** Voss cites to several prior cases to support a 60-day suspension. But those cases fail to encompass the gravity of all of Voss's misconduct, do not include allegations of intentional misappropriation, or lack the abundance of aggravating factors present here. *See, e.g., In re Tancabel*, 792 N.W.2d 835, 835 (Minn. 2011) (order) (suspending a lawyer indefinitely for a minimum of 90 days when the lawyer neglected client matters, failed to deposit funds in a trust account, and failed to cooper-ate with the disciplinary investigation); *Rebeau*, 787 N.W.2d at 173–77 (indefinitely suspending a lawyer for a minimum of 12 months when the lawyer failed to timely file and pay employer withholding taxes, committed trust account violations and thereby negligently misappropriated client funds, neglected clients, and failed to cooperate with the disciplinary investigation); *In re Erickson*, 653 N.W.2d 184, 189, 191–92 (Minn.2002) (suspending a lawyer for 30 days when the

disagree. *See Fairbairn,* 802 N.W.2d at 747–48 (imposing a more severe discipline than the referee's recommendation); *Rooney,* 709 N.W.2d at 272 (same). Voss misappropriated client funds, misused his trust account, and failed to timely file and pay taxes; and consistent with our prior cases, his serious misconduct warrants disbarment absent substantial mitigating factors. The referee's recommendation failed to follow that precedent. To be sure, the referee found that Voss has agreed to repay his delinquent tax liability. But agreeing to pay taxes owed is not a substantial mitigating factor that overcomes Voss's serious misconduct. Further, the circumstances of this case—particularly Voss's lack of recognition and remorse—only serve to aggravate, rather than mitigate, the appropriate sanction. An indefinite suspension is insufficient to protect the public, safeguard the judicial system, and deter future misconduct by Voss and other attorneys. Based on our precedent, the totality of Voss's misconduct, and the aggravating factors, we conclude that the appropriate discipline for Voss's misconduct is disbarment.

Accordingly, we order that:

1. Respondent Barry V. Voss is disbarred from the practice of law in the State of Minnesota, effective upon the date of filing of this opinion;

2. Voss shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals); and

3. Voss shall pay $900 in costs and disbursements pursuant to Rule 24, RLPR.

ANDERSON, PAUL H., and PAGE, JJ., dissenting.

lawyer failed to cooperate with the disciplinary investigation and had been disciplined

## DISSENT

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent. I dissent because I disagree with the sanction the majority is imposing on attorney Barry V. Voss. Instead of disbarment, I conclude that imposing an indefinite suspension with no right to apply for reinstatement for a period of four years is the more appropriate sanction.

There is no question that Voss engaged in very serious professional misconduct. Nor is there any doubt that his misconduct involves several significant aggravating factors and no notable mitigating factors. Moreover, it appears as though Voss has failed to recognize the serious nature of his misconduct or express any remorse for the damage he has caused to his clients, many of whom were vulnerable persons.

Nevertheless, the referee has not recommended disbarment, but rather recommends that we indefinitely suspend Voss for a minimum of two years before he can apply for reinstatement to the practice of law. This recommendation by the referee is a significant factor in my decision to dissent. The referee was in a better position than our court to evaluate the less tangible aspects of this case, such as Voss's credibility and the underlying causes of his misconduct. It is also significant that the Director initially recommended that Voss be indefinitely suspended rather than disbarred. While I would have preferred that both the referee and the Director had explained the reasons for their respective decisions in more detail, their decision-making process and ultimate decisions have significance for me.

five times before).

Given the recommendation of the referee, the conflicting positions taken by the Director, Voss's past reputation as a lawyer, his history in the practice of law, and the apparent implosion of Voss's well-established practice of law within a defined period of time, I would conclude that disbarring Voss is not the appropriate sanction to impose. Something less severe than disbarment is in order. Therefore, I would indefinitely suspend Voss from the practice of law with no right to seek reinstatement for a period of four years.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.